Scott F. CRANFORD,
Petitioner/Counter–Defendant/Appellee,

v.

Marcella CRANFORD,
Respondent/Counter–Plaintiff/Appellant.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Feb. 17, 1989.

Permission to Appeal Denied by Supreme
Court June 5, 1989.

Mary Frances Lyle, Nashville, for re-spondent/counter-plaintiff/appellant.

Joseph M. Dalton, Nashville, for petition-er/counter-defendant/appellee.

OPINION

KOCH, Judge.

This appeal concerns a spouse's continu-ing obligation to support a former spouse who has multiple sclerosis. Two years af-ter the dissolution of their eighteen-year marriage, the husband filed a petition in the Circuit Court for Davidson County seeking to terminate his obligation to sup-port his wife on the grounds that she had been given an adequate opportunity to re-habilitate herself. The trial court heard the case without a jury and substantially reduced the husband's support obligations. The wife has appealed. We find that the evidence preponderates against the trial

court's findings and in favor of the wife's request for increased support.

## I.

Scott F. Cranford married Marcella Cranford in 1966, the same year he began his optometry practice in Nashville. They have no children. In 1979, Mrs. Cranford began attending the University of Tennessee's College of Veterinary Medicine in Knoxville. In early 1981, she began to experience weakness in her legs which was diagnosed as multiple sclerosis.

The parties separated in July, 1981. Mrs. Cranford continued to reside in a house the parties had purchased in Knoxville, and Dr. Cranford continued to reside in the Nashville area. Mrs. Cranford graduated from veterinary school in 1982. However, her multiple sclerosis prevented her from becoming a practicing veterinarian and from passing her national licensing examination. She supported herself by giving animal conservation lectures to school groups and other community organizations.

Dr. Cranford became involved with another woman and filed for divorce in March, 1983. Mrs. Cranford counterclaimed for divorce, and the trial court granted her a divorce in November, 1983. However, the trial court set aside the decree in January, 1984. It also ordered Dr. Cranford to pay Mrs. Cranford $1,000 per month in *pendente lite* support.

The trial court awarded Mrs. Cranford a bed and board divorce in October, 1984. Later, on July 19, 1985, it granted her an absolute divorce, divided the marital estate, and directed Dr. Cranford to pay Mrs. Cranford $1,300 each month for her support. Mrs. Cranford received the house in Knoxville and became solely responsible for the payment of its mortgage. In October, 1985, the trial court also ordered Dr. Cranford to obtain a $100,000 life insurance policy naming Mrs. Cranford as the beneficiary.

Dr. Cranford married his live-in girl friend in October, 1985. Mrs. Cranford had a serious multiple sclerosis attack in January, 1986 that required hospitalization. She had another attack in early 1987. Dr. Cranford divorced his second wife in July, 1987 after agreeing to pay her a substantial cash settlement.

In July, 1987, Dr. Cranford filed a petition requesting the trial court to terminate his obligation to continue to support Mrs. Cranford, insisting that his earning capacity had changed and that Mrs. Cranford had been given sufficient time to rehabilitate herself. Mrs. Cranford filed a counterclaim seeking to increase her support payments.

The trial court heard the proof in March, 1988. Dr. Cranford, who now practices in Nashville, Fairview, and Murfreesboro, stated that his business was prospering and that his income had actually increased. While conceding that Mrs. Cranford had multiple sclerosis, he insisted that, "as a matter of principle," he should not be required to support Mrs. Cranford because he had "supported her for 22 years" and because he did not think Mrs. Cranford "has any incentive to work because she's being supported."

Mrs. Cranford described how her multiple sclerosis has progressed since the divorce in 1985. She walks with a stutter step which is a characteristic of persons with multiple sclerosis, and she is now required to wear a brace on her right leg and to use a cane. She has lost control of her bladder and suffers from severe fatigue and loss of energy. Her short term memory is deteriorating, and she is experiencing numbness, tingling, and arthritis-type pain.

Mrs. Cranford also explained that her ability to earn an income has decreased during the two years after the divorce. She stated that her illness prevented her from seeking steady employment as a veterinarian and that she was unable to give more than two or three lectures a week. She testified that she earned approximately $300 per month by giving lectures and that her only other source of income, other than Dr. Cranford's support payments, was $130 per month which she receives as rent. She explained that she was unable to pay the

medical bills that had accumulated since 1986, that she had been required to borrow money to make her house payments, and that collection agencies were contacting her about her debts.

The trial court found that Mrs. Cranford had multiple sclerosis but stated that it did not "think that Dr. Cranford should be saddled with an inexorable amount for the rest of his life to support Mrs. Cranston [sic] ... with whom he is no longer married." Thus, finding that Mrs. Cranford "is capable of some additional economic and monetary employment which she is not making at the moment," the trial court decreased the amount of Dr. Cranford's support obligation to $750 per month effective in April, 1988 and then to $500 per month effective in August, 1988. The trial court also declined to require Dr. Cranford to pay the medical bills Mrs. Cranford had accumulated since the divorce.

## II.

Mrs. Cranford contends that the trial court erred by declining to increase the amount of maintenance and support she is receiving from Dr. Cranford. She insists that the evidence preponderates against the trial court's decision and in favor of her request for an increase in her support payments. We agree.

## A.

■ There are no hard and fast rules for determining the extent of a person's obligation to support a former spouse. *Stone v. Stone*, 56 Tenn.App. 607, 615–16, 409 S.W.2d 388, 392–93 (1966); *Walden v. Walden*, 13 Tenn.App. 337, 344 (1930). The decision is factually driven and calls for a careful balancing of numerous factors, including those listed in Tenn.Code Ann. § 36–5–101(d) (Supp.1988). Accordingly, appellate courts give wide latitude to a trial court's alimony and maintenance decisions.

However, spousal support decisions are subject to appellate review pursuant to Tenn.R.App.P. 13(d). Thus, in order for a

support decision to be upheld, it must be based upon the proper application of the relevant legal principles and upon a preponderance of the evidence. The trial court's decision with regard to Dr. Cranford's obligation to support Mrs. Cranford is based on neither.

■ An award for spousal support cannot be modified unless there has been a substantial change in circumstances [1] since the entry of the previous support decree. *Seal v. Seal*, 726 S.W.2d 934, 935 (Tenn.Ct. App.1986); *Jones v. Jones*, 659 S.W.2d 23, 24 (Tenn.Ct.App.1983). However, once a change has been shown to exist, the courts should weigh the same factors that were considered in making the original support award. *Threadgill v. Threadgill*, 740 S.W.2d 419, 422–23 (Tenn.Ct.App.1987).

■ While Tenn.Code Ann. § 36–5–101(d) authorizes the courts to consider many factors, the real need of the spouse seeking the support is the single most important factor. *Lancaster v. Lancaster*, 671 S.W.2d 501, 503 (Tenn.Ct.App. 1984). In addition to the need of the disadvantaged spouse, the courts most often consider the ability of the obligor spouse to provide support. *Fisher v. Fisher*, 648 S.W.2d 244, 246–47 (Tenn.1983); *Barker v. Barker*, 671 S.W.2d 843, 847 (Tenn.Ct.App. 1984); *Aleshire v. Aleshire*, 642 S.W.2d 729, 733 (Tenn.Ct.App.1981).

## B.

Traditionally, Tennessee, like most jurisdictions, viewed spousal support, or alimony, as a recognition of a husband's common law obligation to support his wife or as compensation for the wife's contributions to the marriage. *Rush v. Rush*, 33 Tenn. App. 496, 503, 232 S.W.2d 333, 336 (1949); Tenn.Code Ann. § 36–5–101(d)(9); 2 H. Clark, *The Law of Domestic Relations in the United States* § 17.5, at 254–55 (2d ed. 1987). Alimony payments were intended to reduce the financial impact of the divorce on the wife. *See Shackleford v. Shackle-*

---

**1.** Tenn.Code Ann. § 36–5–101(a)(1) states that "on application of either party, the court may decree an increase or decrease of such allow-ance only upon a showing of a substantial and material change in circumstances."

ford, 611 S.W.2d 598, 601 (Tenn.Ct.App. 1980); 2 H. Clark, *The Law of Domestic Relations in the United States* § 17.5, at 255 (2d ed. 1987).

In the last decade, Tennessee and many other jurisdictions have moved away from the traditional concept of alimony toward the concept of "rehabilitative support." This concept views spousal support as

a transitional tool, which provides financial support for the recipient spouse while he or she acquires job skills, education, or training which will enable him or her to become fully self-supporting, in a period typically set at not more than several years from the date of dissolution.

3 Family Law and Practice (MB) § 35.02[2][a], at 35–4 (1988); W. Garrett, *Tennessee Divorce, Alimony & Child Custody* §§ 13–1, 13–10 (2d ed. 1984). Accordingly, Tenn.Code Ann. § 36–5–101(d) states

It is the intent of the general assembly that a spouse who is economically disadvantaged relative to the other spouse be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance.

However, the advent of rehabilitative support did not totally displace permanent alimony. Tenn.Code Ann. § 36–5–101(d) provides that the courts may still award long-term support and maintenance until the death or remarriage of the recipient spouse where "rehabilitation is not feasible in consideration of all relevant factors." Thus, Tennessee's statutes governing awards for spousal support still recognize that

The husband, having entered one of the strongest and most fundamental relationships known to the law, must continue to bear its financial burden where he can reasonably do so and where it is necessary in order to prevent a relatively greater hardship to the wife.

2 H. Clark, *The Law of Domestic Relations in the United States* § 17.5, at 255 (2d ed. 1987).

### C.

■ Under the facts of this case, Mrs. Cranford is entitled not only to long-term spousal support but also to an increase in the amount of support. Her multiple sclerosis continues to take its toll on her physical and mental health. It is sapping her strength; it is robbing her of mobility; and it is eroding her memory and her ability to deal with the ordinary pressures of day-to-day living.

According to her neurologist, Mrs. Cranford is exhibiting all the signs of chronic, mildly progressing multiple sclerosis. There are no prospects for a cure. As the disease continues to attack her central nervous system, Mrs. Cranford can only look forward to a "very slow downhill course." As time goes on, Mrs. Cranford can expect more attacks, continuing loss of her motor functions, and difficult personality disorders.

Mrs. Cranford is now totally disabled under the Social Security guidelines.[2] She cannot practice her profession. Her condition renders her unemployable for all practical purposes. If she could find work suited to her condition, she would only be able to work part-time doing menial, repetitive tasks.

Despite her limitations, Mrs. Cranford has attempted to remain self-supporting. She continues to give her animal conservation lectures when she can, and she rents out a portion of her home. She is presently able to earn approximately $5,000 to $6,000 per year, but the gulf between her income and her financial needs will continue to widen as her disease progresses.

Mrs. Cranford has accumulated approximately $2,400 in medical bills since the divorce. She has fallen behind on her house payments and has incurred expenses in repairing her house. She has also incurred legal expenses as a result of Dr. Cranford's continuing efforts to terminate or diminish his support obligations. At present, her monthly expenses exceed her income by $1,000. There is no proof in the record indicating that her situation will improve.

---

**2.** However, Mrs. Cranford is apparently ineligible to receive social security benefits.

In contrast to Mrs. Cranford, Dr. Cranford continues to prosper. Between 1985 and 1987, his gross income increased from $283,000 to $303,000, while his net income has increased during the same period from $104,000 to $122,000. He makes sizeable charitable contributions exceeding $13,000 a year, and he enjoys frequent business-related trips. He is in good health, and his prospects for continued employment and prosperity are unblemished. He readily concedes that he is able to support Mrs. Cranford, but he insists that he should not be required to do so because he thinks he has supported her long enough.

In cases where the trial court's decision is not supported by the evidence, we have a duty under Tenn.R.App.P. 36(a) to enter a decree consistent with the law and the facts. *See Tipton v. Smith,* 593 S.W.2d 298, 301 (Tenn.Ct.App.1979). We have reviewed the evidence as required by Tenn.R. App.P. 13(d) and have determined that the trial court erred by decreasing the amount of spousal support Dr. Cranford should be required to pay to Mrs. Cranford.

Taking into consideration the duration of the parties' marriage, their physical and psychological condition, their respective earning capacity and assets, and their pre-dissolution standard of living, we have determined that Dr. Cranford's support obligation should be increased from $1,300 to $1,800 per month effective upon the first day of the first month following the filing of this opinion.

### D.

Medical bills form a large part of Mrs. Cranford's monthly expenses. In the past, Mrs. Cranford has foregone recommended medical treatment because she could not afford it. She is faced with incurring additional medical expenses as her condition worsens. Based upon Mrs. Cranford's inability to meet her own needs and Dr. Cranford's ability to provide support, we have determined that Dr. Cranford should be required to assist Mrs. Cranford with her reasonable medical expenses in two ways. First, he should provide her with $2,000 for the payment of her accrued medical bills. Second, he should provide her with an additional $170 per month with which she can purchase health insurance through the Tennessee Comprehensive Health Insurance Pool and the supplemental insurance available through Mutual of Omaha.

### E.

Mrs. Cranford incurred $3,798.45 in attorney fees defending against Dr. Cranford's efforts to terminate his support obligation. The trial court awarded her $2,000 to apply toward these fees, but Mrs. Cranford insists that the award is insufficient because she has no funds with which to pay the balance of her legal expenses.

■ Awards for attorneys fees are deemed to be alimony. *Raskind v. Raskind,* 45 Tenn.App. 583, 601, 325 S.W.2d 617, 625 (1959). They are awarded when the recipient spouse lacks sufficient funds to pay for legal representation. *Fox v. Fox,* 657 S.W.2d 747, 749 (Tenn.1983); *Ingram v. Ingram,* 721 S.W.2d 262, 264 (Tenn.Ct.App.1986).

■ There is little doubt that Mrs. Cranford lacks the resources to pay her legal fees. She has incurred these expenses only because of Dr. Cranford's efforts to terminate his support obligation. She should not be required to liquidate the assets with which she supports herself in order to pay her lawyers. *Harwell v. Harwell,* 612 S.W.2d 182, 185 (Tenn.Ct.App.1980).

Accordingly, we find that there is insufficient evidence to support the trial court's decision to award Mrs. Cranford less than half of the legal expenses she has incurred. On the contrary, the evidence preponderates in favor of awarding her the full amount of the legal expenses she incurred in the trial court, using the same payment schedule contained in the trial court's judgment.

We have also determined that Mrs. Cranford is entitled to an additional award to defray the legal expenses she has incurred on this appeal. The amount of this award should be set by the trial court on remand. *Folk v. Folk,* 210 Tenn. 367, 379, 357 S.W.2d 828, 828–29 (1962).

### III.

The portion of the trial court's judgment directing Dr. Cranford to pay Mrs. Cran-

ford $1,707.64 in unpaid costs from an earlier proceeding and $1,691.78 in interest on a prior alimony *in solido* award is affirmed. The trial court's reduction of the amount of Dr. Cranford's support payments is reversed, as is its denial of Mrs. Cranford's request for an award for accrued medical bills and for medical insurance. The case is remanded to the trial court for the entry and enforcement of an order consistent with this opinion. The costs of the appeal are taxed to Dr. Scott F. Cranford and his surety for which execution, if necessary, may issue.

TODD, P.J., and LEWIS, J., concur.