## IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

_____

JUDY MARGARET JACKSON
VIROSTEK,

        Plaintiff,

v.

JAMES R. VIROSTEK,

        Defendant.

Shelby Chancery No. 21460-2
C.A. No. 02A01-9601-CH-00019

Hon. Floyd Peete, Chancellor

**FILED**

**May 6, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

MIMI PHILLIPS, Norwood, Philips, Deboo, Howard & Grubb, Memphis,  Attorney for Plaintiff.

ROBERT A. TALLEY, Brown, Brasher, & Smith, Memphis, Attorney for Defendant.

*REVERSED IN PART AND AFFIRMED IN PART*

Opinion filed:

_____

TOMLIN, Sr. J.

      Judy Margaret Jackson Virostek ("Wife") filed suit for divorce in the Chancery

Court of Shelby County against James R. Virostek ("Husband").  Following a bench

trial the chancellor entered a decree awarding Wife a divorce on the grounds of

irreconcilable differences.  The divorce decree also incorporated therein by reference a

Marital Dissolution Agreement ("MDA") awarding custody of the parties' minor child

to Wife as well as providing that Husband would pay child support along with

rehabilitative alimony to Wife.  Thereafter Husband filed a motion to modify the

divorce decree relative to the payment of child support and alimony.  Wife responded

with a counter-petition seeking to have Husband held in contempt for failure to abide

by the terms of the MDA.  Following a hearing the chancellor denied Husband's

petition to modify relative to the payment of alimony and child support.  The court also

found Husband in contempt of court for failing to abide by the provisions of the MDA,

ordered Husband to disperse funds from the trust account of the parties' minor son to

satisfy an outstanding tuition balance at the son's private school and ordered Husband

to pay Wife's attorney fees, approximating $15,000.00.

      On appeal Husband presents four issues for our consideration: whether the

chancellor erred in: (1) denying Husband's petition to modify the MDA relative to

paying alimony and child support; (2) finding Husband in contempt of court for failure to pay child support and alimony; (3) requiring Husband to pay his minor son's high school tuition from a trust fund under his control; and (4) awarding Wife attorney fees. For the reasons hereafter stated, we reverse the decree of the chancellor in part and otherwise affirm.

The basic facts are not in dispute. The parties were married for twenty-six years prior to their separation and divorce in the spring of 1993. A son was born to the marriage, who was sixteen years old at that time. At the time of the separation, Husband was employed as Senior Vice-President of Retail Banking at Community Bank in Germantown, and was earning $79,500.00 per year. Husband had been employed in the banking business since 1966. He had worked his way up in the industry at banks throughout the nation, having changed jobs ten times over the course of twenty years. Wife, slightly younger than Husband, remained a homemaker during the course of the marriage. Following the divorce, Wife was granted a four-year college scholarship at Carnegie-Mellon University in Pittsburgh, Pennsylvania, which necessitated that she and the parties' son move to Pennsylvania. Upon moving to Pittsburgh, Wife enrolled their son in a private high school. The annual tuition approximated $7,500.00 per year.

Some six months following the divorce in September 1993, Husband was involuntarily terminated from his position at Community Bank. He negotiated a severance package worth $21,000.00 that was paid to him two weeks after his termination. Three days after termination Husband signed a Petition to Temporarily Suspend Child Support and Alimony Payments and to Modify the Final Decree, which was filed three weeks later. Husband asserted his involuntary termination as grounds for modification.

Three weeks after his termination Husband left Memphis for Pompano Beach, Florida, where he moved in with his paramour, Ms. Gwyn Huggins. In January 1994, Husband accepted a job as a securities broker selling stocks and bond mutual funds on a straight commission. Husband earned approximately $8,000.00 from this employment over the next three months. At that time he accepted a similar position with the

2

brokerage subsidiary of First Union Bank, where he was paid a draw of $3,000.00 per month. In addition he received nearly $15,000.00 in March 1994 from the sale of stock options he held in Community Bank, his former employer.

By March 1994, Husband had fallen behind in making his child support and alimony payments to Wife. Wife filed a counter-petition to Husband's petition to modify, seeking to have Husband held in contempt of court for failing to timely comply with the terms of the MDA, as well as seeking attorney fees and costs incurred in contesting Husband's petition.

Following a hearing the chancellor entered an order denying Husband's petition to suspend or modify alimony and child support payments, finding that Husband failed to carry the burden of proof showing a substantial and material change in circumstances, and also finding that while Husband showed a reduction in income, he failed to show a reduction or alteration in his earning capacity. The chancellor found Husband in contempt of court, but held punishment in abeyance. The amount of past due alimony and child support was reduced to judgment, totaling $8,075.00. At that hearing the chancellor failed to act on Wife's request for attorney fees.

Wife subsequently filed a motion seeking to have the court order Husband to disperse funds from their child's trust account to pay an outstanding balance for tuition owed to a private school in Pittsburgh. Husband filed a notice of appeal from the original order of the trial court. This court dismissed Husband's appeal on the grounds that the order appealed from was not a final judgment.

After the court granted Wife's motion to require Husband to pay their son's delinquent high school tuition, Wife filed a motion calling upon the court to issue a final, appealable order, noting that the court had not ruled on the matter of Husband's contempt, nor had the court acted upon Wife's request for attorney fees. The motion additionally recited that Husband was still in contempt and that he had married his paramour.

Following a hearing the chancellor entered a final order that reaffirmed his previous orders, found Husband in contempt of the orders of that court, with punishment set at three days confinement in the Shelby County jail, with sentence

suspended. In addition, the court ordered Husband to pay Wife's attorney fees in the amount of $14,859.67 and ordered Husband to encroach upon the investment funds in his control to pay the delinquent tuition fees relative to his child's education. This appeal followed.

## I. The Failure to Reduce Alimony and Child Support.

For the sake of judicial convenience and economy we will consider Husband's first two issues together—that of the trial court's refusal to modify the alimony and child support payments. The MDA entered into between the parties provided that Husband would pay Wife rehabilitative alimony in the amount of $1,750.00 a month for two months, followed by $1,500.00 per month for the next 46 months. Thereafter, Husband would pay Wife $1,800.00 per month as periodic alimony for 72 months, with the payments then reduced to $1,200.00 per month for the next 60 months. Payments would thereafter be reduced to $700.00 per month and would be paid as alimony *in futuro*, with a condition that the monthly payments would decrease dollar for dollar as Wife's earnings exceeded $1,200.00 per month.

Paragraph 9 of the MDA provides in pertinent part as follows:

> It is the express intention of the parties that this award of alimony is for the purpose of rehabilitating Wife, assisting with her education and living expenses while she prepares for her career. The parties expressly intend that this award shall not be modifiable for any future circumstances, except that all payments will cease in the event of the Wife's death. Said temporary alimony may be subjected to modification in the event of an involuntary termination of Husband's current employment.

Husband contends that in accordance with the language in the paragraph set forth above, inasmuch as the proof shows that he was involuntarily terminated from his employment, the provisions of paragraph 9 became effective leaving as the only matter left for the court to determine how much his alimony payments would be reduced. He contends in the alternative that should his interpretation of this agreement be incorrect, then and in that event he has shown a substantial and material change in circumstances.

In finding that Husband had failed to carry his burden of proof in this regard, the trial court obviously did not construe this paragraph in the same manner as Husband did. We agree with the construction rendered by the trial court. The language in

4

question merely provided that if Husband was involuntarily terminated, he could petition the court to modify the alimony payments. Accordingly, this court will look at this matter in light of the statutory and case law of this state—that is, whether Husband has carried the burden of proving that there had been a substantial and material change in his financial circumstances.

We give wide latitude to an alimony award of a trial court. Cranford v. Cranford, 772 S.W.2d 48, 50 (Tenn. App. 1989). Our scope of review of findings of the trial court in this regard is *de novo* review of the record presented to us. Absent an error of law, the findings of fact of the trial court come to this court with a presumption of correctness and we must affirm unless we find that the preponderance of evidence is otherwise. 13(d) T.R.A.P..

Husband's motion before the trial court sought to temporarily suspend his alimony and child support payments for a reasonable period of time until he obtained new employment and, in addition, to modify the child support and alimony payments that were to begin some time in the future "to a reasonable amount based upon the financial circumstances of the parties." In his argument before the chancellor Husband's attorney conceded that there was no question but that the needs as shown by Wife were real and deserving. Therefore in examining this sub-issue we look only at any real changes in the ability to pay on the part of Husband and to ascertain whether or not these changes, if any, were both substantial and material.

It is undisputed that immediately following his loss of employment with Community Bank in September 1993, that his earnings declined substantially. The record reflects that at this time Wife and the parties' son had moved to Pittsburgh, where she had begun her college education. Shortly after his employment was terminated Husband broke the lease on his apartment in Memphis and moved to Pompano Beach, Florida where he moved in with his girlfriend. Husband testified that after reaching Florida he sent out resumes all over the southeast, but received no favorable responses.

Eventually he obtained a job with a brokerage firm in Florida where his only compensation was straight commission, with no draw. He testified that for the first

5

three months of 1994 he earned $500.00, $3,600.00 and $3,000.00, respectively. In May 1994, Husband took a similar job with the brokerage division of First Union Bank, which paid a $3,000.00 per month draw for the first three months. Also during this period he exercised his stock options on Community Bank stock, receiving approximately $33,000.00 from the sale of that stock. Of this amount he paid $17,000.00 to his brother to repay a loan taken out to purchase the stock. He paid no alimony in February, but paid some child support. With the money from the sale of the bank stock, while he paid some arrearage, he used a substantial amount to pay debts and loans.

Husband admitted that shortly after his termination Community Bank paid him $21,000.00 in severance pay, but that nevertheless he proceeded to file this petition. He further admitted that the total deposits to his bank account from October 6, 1993 to August 15, 1994 were $61,262.00. He states that of this amount $32,250.00 came from the exercise of his stock option with the ensuing sale thereof, with $17,000.00 as aforesaid being paid to brother. He paid $6,800.00 to American Express. He stated further that he was current at that time on child support and alimony, but from March 1994 to the date of trial in August 1994, he fell into arrears some $7,600.00. The record reflects that for the period January through August, he owed a total of $12,500.00 in combined alimony and child support, but paid only $4,900.00.

While Husband's monthly income had been substantially reduced, nonetheless, during this period of time Husband found himself with substantial amounts of cash on hand, both from his severance pay and the sale of Community Bank stock. Husband, along with Wife, negotiated and agreed to the provisions in the MDA relative to the payment of alimony. While he had petitioned the court for temporary termination and reduction, he had no clearance from the court to renege on his obligation to his former Wife for the sake of paying debts. We resolve this issue in favor of Wife.

We now address the other sub-issue involved in this particular matter, that of the refusal of the chancellor to grant Husband relief in his child support payments, which had been set by the MDA at $1,000.00 per month. In the chancellor's order on the petition to temporarily suspend and modify, the court said:

6

> The Court further finds that the Petition to Suspend or Modify Alimony and Child Support Payments should be denied. Again, in so finding, the Court notes that the burden of showing a substantial and material change in circumstances was not met. . . .

In Jones v. Jones, 870 S.W.2d 281 (Tenn. 1994), our supreme court held that the Child Support Guidelines (hereafter "CSG") codified as T.C.A. § 36-5-101(e)(1) *et seq.*, expressly provide that they are to be applied in any action brought to establish or modify child support. Prior to July 1, 1994, trial courts could modify existing child support orders based upon a showing of "a substantial and material change in circumstances." *See* T.C.A. § 36-5-101(a)(1)(1991)(Amended 1994). However, the legislature replaced this standard in 1994 with a more precise one now popularly known as the "significant variation" test, which requires the court to decree "an increase or decrease of such allowance when there is found to be a significant variance, as defined in the Child Support Guidelines . . . between the guidelines and the amount of support currently ordered. . . ." Turner v. Turner, 919 S.W.2d 340, 343 (Tenn. App. 1995).

In accordance with the amended statute, the Department of Human Services promulgated a public necessity rule that set forth a "significant variation" rule for the courts to employ under these circumstances. Both the amended statute and the amended rule became effective July 1, 1994.

The earlier of the two hearings that led to the trial court's order took place on August 18, 1994. It is conceded by Wife in her brief and we likewise affirm that the "significant variation" test set out in the current CSG as amended should have been applied by the chancellor, rather than the earlier guideline of "substantial and material change in circumstances." Accordingly, we reverse the decree of the chancellor denying Husband's petition to temporarily terminate and modify the MDA as it relates to child support, and upon remand, respectfully direct the chancellor to conduct an evidentiary hearing under the current CSG in order to ascertain what, if any, modifications need to be made in the child support payments for the specific period involved under the proof as presented. While we see nothing in this record to justify a complete temporary termination of child support payments, we leave this matter to the

chancellor as well.

## II. The Contempt of Court Issue.

Husband contends that the trial court erred in finding him in contempt of court for failure to timely pay alimony and child support pursuant to the MDA. At the time of trial the record reflects that Husband owed $3,040.00 for child support and $4,560.00 for alimony.

A finding of contempt by the trial court comes to us on appeal with the presumption of correctness. Johnson v. Johnson, 499 S.W.2d 268 (Tenn. App. 1973). In addition, a failure to comply with a decree for the payment of alimony places the obligor *prima facie* in contempt of court and puts upon him the burden of proving his inability to make the payments as directed. Chappell v. Chappell, 261 S.W.2d 824, 831 (Tenn. App. 1952).

Following the hearing on contempt, as well as other matters, the chancellor entered an interim order, which contained the following pertaining to the contempt charge:

> 1. That the Petitioner James R. Virostek is in *willful contempt* of this Court's Order on the payment of alimony and child support. In so finding, the Court specifically notes that the burden of proof was upon Mr. Virostek to show his inability to make the Court Ordered payments, and that Mr. Virostek failed to show an ability to make payments, while clearly showing the ability to discharge his personal debts.
>
> In so finding, the Court further notes that the public policy of Tennessee is to punish by contempt the party who, through willful disobedience or obstinacy, refuses to comply with a Court Order.

The chancellor held in abeyance the specific punishment for contempt pending further orders of the court. In its final order, the chancellor sentenced Husband to three days confinement in the Shelby County jail, but with the sentence to be suspended.

From reviewing this record, we are of the opinion that the evidence does not preponderate against the finding of the chancellor that Husband was in willful contempt of that court's orders relative to the payment of alimony as well as child support. This failure by Husband is a "civil contempt proceeding" and the court had no authority in our opinion to commit Husband to jail for a definite period of time, but only could have committed him for an indeterminate sentence until the amount of alimony in arrears

was paid. While the chancellor did not ever place the label "criminal contempt" on the conduct of Husband, by this determinate sentence he did affix such a label. In addition, the appropriate notice requirements pertaining to a criminal contempt proceeding were not complied with. Accordingly, we are of the opinion that while the chancellor was correct in finding Husband in contempt of court, he was in error in making the contempt criminal in nature. We therefore reverse the chancellor insofar as the determinate jail sentence is concerned, notwithstanding the fact that it was suspended.

### III. The Custodial Trust Fund.

Husband contends that the trial court was in error in requiring him to encroach upon a trust fund of the parties' son for the purpose of paying an outstanding tuition balance incurred at a private high school after Wife and son moved to Pittsburgh. Husband contends that the funds in this account were a gift to their son from a great-aunt for the express purpose of assisting the parties in paying the son's college education.

During the marriage the parties had by choice sent their son to a private high school in Memphis. The record shows that on previous occasions, while yet married, the parties had invaded this trust fund in order to pay high school tuition for their child when living in Memphis. The contention by Husband that this fund was for the sole use of the son's college education is not persuasive. Under the circumstances, we are of the opinion that the trial court did not abuse its discretion in directing in this one instance that the balance of a year's tuition be paid from this fund. This issue is without merit.

### IV. Wife's Attorney Fees.

The trial court is given wide discretion in the allowance of attorney fees, considered in divorce cases to be a form of alimony. This court will not interfere except upon a showing of an abuse of discretion by the trial court. Threadgill v. Threadgill 740 S.W.2d 419, 426 (Tenn. App. 1987). It is Husband's contention that the trial court abused its discretion in directing Husband to pay Wife's attorney fees incurred in defending the petition to modify filed by Husband.

We are of the opinion that this issue is without merit. In Cranford v. Cranford,

772 S.W.2d 48 (Tenn. App. 1989) this court reversed the trial court's decision to award wife only one-half of her attorney fees in connection with her resistance to husband's efforts to terminate the court-ordered alimony, and awarded wife the full amount of her attorney fees, including those fees incurred on appeal, noting that wife in that case lacked the resources to pay her legal fees and incurred them only because of husband's efforts to terminate his support obligation. *Id.* at 52.

In the case before us, the record is clear that Wife has virtually no assets to speak of from which to pay these fees. She is currently seeking to obtain a college degree so as to develop her financial independence. Wife has been forced to incur these expenses only because of Husband's efforts to terminate and/or modify his child support and alimony obligations, the grounds for which are suspect, to say the least. In our opinion the trial court did not abuse its discretion in ordering the payment of Wife's legal fees for expenses incurred.

Wife has also asked this court to award her attorney fees for legal expenses incurred in connection with this appeal. We are of the opinion that she is entitled to be compensated for these expenses. Upon remand, the trial court is directed to hold an appropriate hearing and ascertain the amount of her attorney fees Husband should be ordered to pay.

The decree of the trial court sentencing Husband to three days in jail is reversed. The decree denying Husband's petition to terminate and modify child support payments is reversed. This matter is remanded to the Chancery Court of Shelby County for a hearing in keeping with the provisions of this opinion. The decree of the trial court is otherwise affirmed.

Wife is entitled to attorney fees for service rendered on appeal. The chancellor is directed on remand to conduct a hearing to determine the amount. Costs in this cause on appeal are taxed to Husband, for which execution may issue, if necessary.

_____
TOMLIN, Sr. J.

10

CRAWFORD, P. J.          (CONCURS)


FARMER, J.          (CONCURS)

11