IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
_____

**GARY CURTIS,**

    Plaintiff-Appellant,

Vs.

**JANE WELTHA CURTIS,**

    Defendant-Appellee.

Davidson Circuit No. 95D-2870
C.A. No. 01A01-9810-CV-00566

**FILED**

**August 27, 1999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

FROM THE DAVIDSON COUNTY CIRCUIT COURT
THE HONORABLE MURIEL J. ROBINSON, JUDGE

R. Eddie Davidson of Nashville
For Appellant

Jack Norman, Jr. of Nashville
For Appellee

*AFFIRMED AND REMANDED*

Opinion filed:

**W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.**

**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**DAVID R. FARMER, JUDGE**

This is an alimony modification case. Plaintiff/Appellant, Gary Curtis (Husband), appeals the order of the trial court denying his petition to reduce the amount of alimony paid to Defendant/Appellee, Jane Weltha Curtis (Wife).

The parties were divorced by final decree on April 19, 1995. Husband was ordered to pay Wife $1,176.64 per month alimony *in futuro* until Wife's remarriage or death. Husband appealed to this Court asserting, *inter alia*, that the trial court erred in the amount of alimony *in futuro* awarded. This Court's Opinion filed July 16, 1997 affirmed the trial court's award of alimony *in futuro*. On July 21, 1997, Husband filed a "Petition to Modify Final Decree for Reduction of Alimony" asserting that a reduction is warranted because his deteriorating health has affected his ability to earn income. Wife filed an "Answer and Counter-Petition for Civil Contempt" denying that Husband has experienced health problems that prevent him from paying the alimony. She also alleges that Husband is in willful disobedience of the trial court's order by failing to make alimony payments for two months.

After a hearing, the trial court entered an order on June 16, 1998, denying Husband's petition.[1] The trial court found in pertinent part:

> The Court specifically finds that Mr. Curtis has failed to carry the burden of proof or to satisfactorily prove to the Court that there has been a material change in circumstances justifying a reduction and/or discontinuance of alimony payments as provided for in the final decree. The Court specifically finds that the financial information provided by Mr. Curtis is incomplete and insufficient to enable the Court to reach the conclusion that a reduction in alimony or a discontinuance of alimony payments is justified. In addition, the conflicting proof offered by Mr. Curtis as to income earned and property values is of such variance that the credibility of Mr. Curtis is questioned by the Court.

Husband has appealed, and the only issue for review is whether the trial court erred in denying his petition for modification of alimony.

Since this case was tried by the trial court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

T.C.A. § 36-5-101 provides in pertinent part, that "on application of either party for spousal support, the court may decree an increase or decrease of such allowance only upon a

---

[1] The trial court also dismissed Wife's contempt petition after it was determined that Husband had paid all alimony arrearages and was current on all alimony payments.

showing of a ***substantial and material change of circumstances***." T.C.A. § 36-5-101(a)(1) (1996 & Supp. 1998) (emphasis added). Whether there has been a sufficient showing of a substantial and material change of circumstances is in the sound discretion of the trial court. ***Wilkinson v. Wilkinson***, 1990 WL 95571, at *4 (Tenn. App. July 12, 1990) (citing ***Jones v. Jones***, 784 S.W.2d 349, 352 (Tenn. App. 1989)).

The party seeking relief on the grounds of a substantial and material change in circumstances has the burden of proving such changed circumstances warranting an increase or decrease in the amount of the alimony obligation. ***Seal v. Seal***, 802 S.W.2d 617, 620 (Tenn. App. 1990). The change in circumstances must have occurred since the entry of the divorce decree ordering the payment of alimony. ***Elliot v. Elliot***, 825 S.W.2d 87, 90 (Tenn. App. 1991). The change in circumstances must not have been foreseeable at the time the parties entered into the divorce decree. ***Id.*** If the change in circumstances was anticipated or in the contemplation of the parties at the time they entered into the property settlement agreement, such changes are not material to warrant a modification of the alimony award. ***Jones v. Jones***, 784 S.W.2d 349, 353 (Tenn. App. 1989).

The decision to modify the alimony obligation is factually driven and requires a careful balancing of several factors. ***Cranford v. Cranford***, 772 S.W.2d 48, 50 (Tenn. App. 1989). The factors set forth in T.C.A. § 36-5-101(d), applicable to the initial grant of spousal support and maintenance, where relevant, must be taken into consideration in determining whether there has been a change in circumstances to warrant a modification of the alimony obligation. ***Threadgill v. Threadgill***, 740 S.W.2d 419, 422-23 (Tenn. App. 1987).

While T.C.A. § 36-5-101(d) enumerates several factors for the court to consider, the need of the spouse receiving the support is the single most important factor. ***Cranford***, 772 S.W.2d at 50. In addition to the need of the spouse receiving support, the courts most often take into consideration the ability of the obligor spouse to provide support. ***Id.***

Husband is in his late fifties and owns Star Electric Company. He has only a 7th grade education, has been an electrician for the majority of his life, and knows no trade other than that of an electrician. At the hearing held June 4, 1998, Husband testified that the basis of his request to reduce his alimony obligation was because of health problems that have occurred since the final decree which prevent him from working at the same capacity as before. He stated that he

cannot earn as much income as before and is required to borrow money and liquidate assets in order to pay his alimony obligation. He testified that since the divorce he has been hospitalized approximately seven times due to pneumonia and other complications resulting from chronic obstructive pulmonary disease. He also testified that his medical condition causes him to have shortness of breath, lack of energy, and memory loss thereby preventing him from doing the work required of an electrician. He testified that now he just bids the jobs and obtains material for the jobs, and his employee does the work.

Husband also testified that in 1996, he made approximately $44,000.00 in his business, and that in 1997, he lost $22,000.00. He stated that this is in stark contrast to his income eight to ten years before where he had income of $200,000.00 a year as a result of a big customer which he no longer has and has not had for years. He testified that he has had to borrow from his in-laws and from his brother and has had to sell most of his land to pay his alimony obligation and other court-ordered obligations. He stated that he had borrowed approximately $27,000.00 and that he is being sued by a doctor and a hospital for a hospital stay. Husband further testified that prior to the divorce he was not on any medication and that now he is on sixteen different medications.

On cross-examination, Husband testified that he had a pulmonary problem for a number of years but that it had not bothered him before. He further testified that his doctors and everyone else have tried to get him to quit smoking cigarettes but that he still smokes eight to twelve cigarettes per day, down from two and a half packs per day in 1995. As for his income in 1997, Husband testified that he made $16,000.00. Husband also testified that he had owned a golf course but that he gave it to his current wife in 1997 to operate since he was unable to do the work. When asked about the property he was awarded in the divorce, Husband acknowledged the receipt of the property but testified that he had sold one piece of property to pay Wife's attorney's fees from the divorce and that he recently conveyed another piece of property to his current father-in-law for a consideration of $5,000.00 as collateral for a debt. He further testified that the property he conveyed to his father-in-law had a for sale sign posted on it, that the telephone number on the sign was his phone number, and that the sale price being asked for the property was $40,000.00. In addition, Husband testified that he had borrowed up to $35,000.00 from his current father-in-law but that the debt was down to $7,200.00.

Husband was admonished several times during cross-examination for failing to provide proof to corroborate his testimony and for not giving straight answers to questions asked. For example, when asked on cross-examination about his income and proof of loans and debts, Husband testified that his wife has the records at home.

Husband's answers to interrogatories indicated his gross monthly income from January through the date of the hearing was $4,240.67. As for his net income for the same period, Husband's answer was that it could not be figured until after 1998 taxes are completed. Also an exhibit at the hearing is Husband's 1997 income tax return for his company wherein net income was reported as $16,389.00 for the tax year.

Husband's father-in-law, Cecil Evans, testified that he had loaned Husband approximately $20,000.00 over the years in order for Husband to pay bills. Mr. Evans testified that the property conveyed to him was to pay him back for money previously loaned and that he gave Husband an additional $5,000.00. He testified that Husband probably owed him more money at the time the property was conveyed than the property's worth. Mr. Evans also testified, on cross-examination, that Husband still owes him approximately $7,500.00. When asked if he had any notes or anything to evidence these loans to Husband, Mr. Evans testified that he has some notes but that they were at home.

Anthony Ledbetter, an employee of Husband's company, testified that he has worked for Star Electric Company for approximately ten years. Mr. Ledbetter testified that Husband's physical and mental abilities are less than they were at the time of the divorce in that Husband cannot climb a flight of stairs and that Husband cannot remember his home phone number. He stated that he has not seen Husband do anything that an electrician needs to do such as lifting, stooping, bending and climbing. He also testified that Husband is currently taking medication and that he was unaware of any medication use prior to the parties' divorce. Mr. Ledbetter also testified that he has observed the company's income go down over the last three or four years due to Husband's decrease in his amount of activity with the company and the loss of a major client. On cross-examination, Mr. Ledbetter testified that his gross income for 1997 was $20,000.00.

Husband's current wife, Debra Curtis, testified that she is the bookkeeper for Husband's company and has been since at least 1995. Mrs. Curtis testified that she and Husband file joint

tax returns and that their income in 1995 was $48,000.00, in 1996 there was a loss of $22,000.00, and in 1997 there was income of $16,000.00. She testified that the company's gross income to date for 1998 was approximately $20,000.00 and that she did not have any idea what the income for the company would be for the remainder of the year. She also testified that since the parties' divorce Husband stays short-winded all the time, that he is depressed, and that he is unable to do heavy physical work. On cross-examination, Mrs. Curtis testified that Husband does not receive a payroll check from the company and that Husband's average monthly earnings from the company for 1998 are approximately $4,000.00 before deductions or taxes. She also testified that the golf course is hers and that she is now operating it.

The testimony of Dr. James Reginald Anderson was presented by deposition taken on February 25, 1998. Dr. Anderson testified that he has been a board certified family practice physician since 1986 and that he had been treating Husband since 1991. He testified that Husband suffers from chronic obstructive pulmonary disease which is a condition of the lungs where the bronchial tubes and the small alveoli are chronically destroyed. Husband's condition initially started showing some signs in 1995 but that the actual diagnosis was not clear until 1996 or 1997. He stated that Husband's condition has continued to worsen since 1995. Dr. Anderson further testified that Husband's lung capacity is about half of what it should be and that Husband's condition decreases his capacity to work and his ability to walk or carry on any kind of strenuous activities. The inactivity reduces the amount of oxygen his brain receives thereby effecting his mental capacity and ability to remember. He also testified that Husband's condition is in the moderate to severe status, and his condition has resulted in several hospitalizations for pneumonia or bronchitis. Concerning Husband's prognosis, Dr. Anderson testified that people with this condition generally have a continual decrease in their lung capacity over time and that this appears to be the case for Husband. Dr. Anderson also testified that Husband has a diabetic condition which was recently discovered. On cross-examination, Dr. Anderson acknowledged that Husband's medical records since 1986 contained numerous references to pulmonary problems. He also acknowledged that the records also reflect that Husband has been a chronic smoker, that he is still trying to get Husband to quit smoking, and that the use of cigarettes is not helping Husband's pulmonary condition.

At the end of the hearing, the trial judge stated from the bench:

6

The Court is very well aware of this Curtis case. I remember when I tried it. I remember the demeanor and the responses of Mr. Curtis then, and his testimony has been just as evasive this time as it was back then. I really have a difficult time weeding things out.

The petition to reduce this alimony is not well taken. There's no sufficient proof to reduce the same. He's failed to carry the burden of proof. More so, the discrepancies in his testimony are to the extent that his credibility is questionable. He completely controls his own income. He owns his own business. He's even divested himself of assets voluntarily. He's given his golf course to the wife. She's going to run that.

He has borrowing capacity. He's given away property that's more valuable than what the debt was, that caused him to transfer to his father-in-law. The transfers are all questionable in this Court's eyes. His alleged impairments are self-induced.

Really, his status hasn't changed hardly any since the trial of this case. So the petition is most respectfully denied. Costs to Mr. Curtis, and I'll entertain the attorneys' fees.

\*          \*          \*

I find that there's really no material change to his health, and I've read this doctor's deposition. And he's got the things that are characteristic of a smoker. But in spite of that, if I believe -- and the doctor's probably right on some things.

He can control his health if he would quit smoking. But taking into consideration that doctor's deposition this man can still earn income. He did not want to pay the alimony from the day one. He doesn't want to now. And there's just no change.

Husband contends that the trial court erred in refusing to reduce or terminate his alimony obligation. He submits that the evidence substantiates a material change in circumstances since he simply cannot work the way he did prior to the divorce.

Wife, on the other hand, asserts that Husband completely and utterly failed to present any evidence of a substantial and material change of circumstance sufficient to convince the trial court that he was entitled to relief. She submits that the testimony of Dr. Anderson and Husband's medical records reveal that Husband had experienced health problems and pulmonary problems since 1983, and that Dr. Anderson never testified that Husband could not work but only stated that he would not expect Husband to perform the task of bending, stooping and walking great distances. Wife asserts that Husband voluntarily contributes to his own health problems. Wife argues that Husband failed to carry the burden of proving that his health problems have resulted in a diminished income since the divorce in 1995, and there is no proof as to his personal earnings since 1995. She argues that the proof revealed that Husband's 1998 income was compatible to, or more than, his income at the time of the divorce in 1995.

From a review of the record, we find that the evidence does not preponderate against the

findings of the trial court. While Husband's health may have deteriorated over the years since the parties' divorce, Husband failed to provide proof that this has diminished his income and his ability to pay the alimony obligation. The only documented proof as to income was for Husband's company. The only proof submitted as to Husband's income was testimony from his wife and from Husband, and the trial court indicated a problem with their credibility. When the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. App. 1997). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *Id*.; *In re Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997). Moreover, while Husband submits that he has had to resort to borrowing money and selling property in order to pay his alimony obligation, these transactions are, as the trial court found, suspect and undocumented.

Accordingly, the order of the trial court is affirmed, and the case is remanded for such further proceedings as necessary. Costs of appeal are assessed against the appellant.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**ALAN E. HIGHERS, JUDGE**

_____
**DAVID R. FARMER, JUDGE**

8