IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

## VENESSA LYNN TOTTY  v.  MICHAEL ALAN TOTTY

**An Appeal from the Circuit Court for Shelby County
No. 157141-5 R.D.; The Honorable Kay S. Robilio, Judge,**

---

**No. W1999-02426-COA-R3-CV - Decided May 2, 2000**

---

This appeal involves a dispute regarding a final decree of divorce entered in the Shelby County Circuit Court.  The Husband appeals the trial court's order claiming error in several aspects of the decision, including the determination as to his alimony obligation.

**Tenn.R.App.P. 3; Appeal as of right; Judgment of the Circuit Court Modified in Part; Vacated in Part and Affirmed in Part**

HIGHERS, J., delivered the opinion of the court, in which CRAWFORD, P.J., W.S., joined, and FARMER, J., concurred separately.

Vickie Hardy Jones, Memphis, for Appellant, Michael Alan Totty

Carol Smith Katz, KATZ MALLORY & MILLER, Memphis, for Appellee, Venessa Lynn Totty

### OPINION

Michael Totty appeals from a final decree of divorce entered in the Circuit Court of Shelby County. For the reasons stated herein, we modify the trial court decision in part, vacate the decision in part, and affirm in all other respects.

### Facts and Procedural History

Michael Alan Totty ("Husband") and Venessa Lynn Totty ("Wife") were married in 1979. The parties had one child during the marriage who was fifteen years old at the time this action arose.[1] Wife filed a complaint for divorce on October 9, 1997, alleging irreconcilable differences and Husband's inappropriate marital conduct as grounds for the divorce. Husband filed an answer and counter-complaint in which he sought a divorce on the same grounds alleged by Wife.

---

[1] According to information contained in the record, the child is no longer a minor, having turned eighteen on November 2, 1999.

The facts most relevant to the present appeal pertain to the financial position of the respective parties. Wife is a high school graduate and attended one semester of nursing school. She holds a license to sell several types of insurance and, at the time these proceedings arose, was employed as an insurance sales agent with Ron Meador Insurance. In this position, Wife is basically self-employed. She deducts her business expenses from her gross income and pays both employee and employer taxes. For 1998, Wife earned eight thousand one hundred dollars ($8,100) in her capacity as an insurance agent. Husband, on the other hand, obtained a GED before entering the Marines. His formal education was supplemented by mechanical training he received in the Marines. He is currently employed by a concrete cutting company and earns forty five thousand dollars ($45,000) per year. During their marriage, the parties amassed a sizable debt which ultimately led them to file separate Chapter 7 bankruptcies.[2]

The trial court entered the final decree of divorce on December 4, 1998. The trial court's order provided for the following: 1) Wife was awarded an absolute divorce on the grounds of inappropriate marital conduct, 2) the parties were awarded joint custody of their child with Husband having primary physical custody, 3) the parties, along with their child, were ordered to attend family counseling to be paid for on a *pro rata* basis, 4) Wife was ordered to pay twenty one percent (21%) of her net income as child support, 5) the parties were ordered to pay various health care expenses for the minor child on a *pro rata* basis, 6) Wife was awarded nine hundred dollars ($900.00) per month as alimony *in futuro*, said sum to be increased to one thousand two hundred dollars ($1,200.00) per month when the parties' son graduated from high school or turned eighteen (18) years old, and 7) Husband was ordered to pay three thousand five hundred dollars ($3,500.00) as alimony *in solido* to pay Wife's attorney fees.

### Law and Analysis

We begin our analysis by noting that this case, and the relationship between the parties, can be described as acrimonious, at best. The record indicates that the trial court entertained numerous factual allegations and disputes. Rule 13(d) of the Tennessee Rules of Appellate Procedure governs our review of the trial court's factual determinations. Accordingly, we will presume that the trial court's findings of fact are correct, "unless the preponderance of the evidence is otherwise." T.R.A.P. 13(d).

Husband argues that the trial court erred in: 1) awarding alimony *in futuro*, 2) the amount awarded as alimony, 3) the basis for calculating Wife's child support obligation, 4) requiring the parties to pay uninsured medical expenses on a *pro rata* basis, 5) requiring the parties, including the child, to attend family counseling, 6) awarding Wife $3,500.00 as alimony *in solido* for payment of her attorney fees, and 7) declining to award Husband attorney fees expended in seeking child support

---

[2] The bankruptcies discharged approximately sixty nine thousand dollars ($69,000) in credit card debt.

from Wife.  We will consider each of these issues in turn.[3]

*I. Alimony*

In his first issue, Husband appeals the trial court's award of alimony *in futuro* in the amount of one thousand two hundred dollars ($1,200.00) per month.[4]  In cases such as the present, we are generally disinclined to second-guess a trial court's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes. See Brown v. Brown, 913 S.W.2d 163, 169 (Tenn. Ct. App.1994); Ingram v. Ingram, 721 S.W.2d 262, 264 (Tenn. Ct. App.1986).

The Tennessee Legislature has expressed a preference for rehabilitative alimony. Specifically, T.C.A. § 36-5-101(d)(1)[5] reflects a preference for temporary, rehabilitative spousal

---

[3] The record in this case has been supplemented with a subsequent order of the trial court which amended certain provisions of the final divorce decree.  Pertinent to the present appeal, that order provided that: 1) Wife was required to pay $225.00 per month in child support and 2) Wife would be responsible for one-third (1/3) of all uninsured medical expenses with Husband being responsible for the remaining two-thirds (2/3).  This subsequent order cures the objections of Husband insofar as it sets a definite obligation as to child support and uninsured medical expenses. Therefore, we do not address those issues.

[4] The $900 figure that also appears in the record is the amount of alimony Wife was to receive until the parties minor child graduated from high school.

[5] T.C.A. § 36-5-101(d)(1) provides:

(d)(1) It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient except as otherwise provided in subdivision (a)(3).  Rehabilitative support and maintenance is a separate class of spousal support as distinguished from alimony in solido and periodic alimony.  In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
(B) The relative education and training of each party, the ability and

3

support, as opposed to long-term support.  See Herrera v. Herrera, 944 S.W.2d 379, 387 (Tenn. Ct. App. 1996);  Wilson v. Moore, 929 S.W.2d 367, 375 (Tenn. Ct. App. 1996).  The purpose of rehabilitative support is to enable the disadvantaged spouse to acquire additional job skills, education, or training that will enable him or her to be more self-sufficient.  See Smith v. Smith, 912 S.W.2d 155, 160 (Tenn. Ct. App. 1995); Cranford v. Cranford, 772 S.W.2d 48, 51 (Tenn. Ct. App. 1989).  This type of temporary support is advantageous because it allows the parties actually to close the relationship.  In contrast, alimony *in futuro* is long-term spousal support meant to provide financial assistance to a disadvantaged spouse who is unable to achieve some degree of self-sufficiency.  See Loria v. Loria, 952 S.W.2d 836, 838 (Tenn. Ct. App. 1997).  This type of support has the obvious disadvantage of creating a continuing relationship between divorced parties.

Husband points out that, in the present case, the trial court expressly found that Wife *was* capable of being rehabilitated.  He argues that this is the threshold question in determining whether alimony *in futuro* is proper.  In response, Wife does not really take issue with the question of whether she is capable of being rehabilitated.  Rather, she argues that there are two considerations in determining whether an award of alimony *in futuro* is proper: 1) whether there is relative economic disadvantage and, if so, 2) whether rehabilitation is feasible.

---

opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C) The duration of the marriage;

(D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so;  and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

4

While recognizing the legislative preference for rehabilitative alimony, the Tennessee Supreme Court has noted that a court may grant alimony *in futuro* where rehabilitation is not feasible. Aaron v. Aaron, 909 S.W.2d 408, 410 (Tenn. 1995); Self v. Self, 861 S.W.2d 360, 361 (Tenn. 1993); See also Tenn. Code Ann. § 36-5-101(d)(1). There is no doubt that Wife is economically disadvantaged as compared to Husband. There also seems to be no dispute that Wife is *capable* of being rehabilitated. Therefore, the dispositive question is whether it is *feasible* for Wife to be rehabilitated. The trial court adopted the position, which Wife now advances, that rehabilitation is not feasible because there is not a source of funds available that would allow her to seek additional education or training.[6] We do not, however, believe this to be the case and, therefore, find the award of alimony *in futuro* to be erroneous.

While we recognize the weight that is due the trial court's alimony determination, we also recognize the need to uphold the legislative preference regarding alimony awards and the public policies that this preference promotes. Long-term spousal support is only appropriate where the disadvantaged spouse is unable to achieve some degree of self-sufficiency. See Loria, 952 S.W.2d at 838. We do not believe that to be the situation in the present case.

Our review of the record, as well as a balancing of the factors contained in T.C.A. § 36-5-101(d) leads us to conclude that rehabilitative alimony is warranted. At 38 years old, Wife is not limited by her age. Additionally, neither her health nor her emotional state prevents her from sustaining gainful employment. There are no minor children, so her ability to work outside the home is not hindered. Wife relies upon Ford v. Ford, 952 S.W.2d 824 (Tenn. Ct. App. 1996) to support her contention that the facts of the present case support the award of alimony *in futuro*. However, Wife has attended nursing school, and she holds licenses to sell, and has been selling, insurance. This is contrary to the facts in Ford, in which Ms. Ford had no formal training or skills and had never held a job other than as a part-time office clerk.

Certainly, rehabilitation will require Wife to make changes in her life and lifestyle. However, rehabilitative alimony will allow her some financial stability while she undertakes to make those changes. In short, we believe that rehabilitative alimony, in a sufficient amount for a sufficient period of time, will allow Wife to meet her financial obligation while striving for self-sufficiency.[7]

---

[6] Although agreeing that Wife was capable of being rehabilitated, the trial court, in awarding alimony *in futuro* stated, "a source of funds to be utilized by Plaintiff to further her education is not available."

[7] Wife argues that she will have to obtain "long term vocational training in a new field of endeavor in order to achieve an income level to support herself to a level relative to her standard of living." However, both parties will have to learn to adjust to a different standard of living. The parties enjoyed a standard of living which was beyond their means, as exemplified by their individual bankruptcies which were filed during the course of these proceedings. For Wife, the tangible effect of this will be her need to improve her earning capacity. Rehabilitative alimony will allow her the time to do so. Moreover, rehabilitative alimony will allow Wife to become self-sufficient, thereby

While there is no exact formula for determining the appropriate duration for rehabilitative alimony, we must endeavor to strike a balance between the interests of both parties. In that regard, we believe forty-eight (48) months is a sufficient period of time to allow Wife to improve her earning capacity. This length of time will provide her with some measure of financial security, while allowing the parties to move on with their individual lives.

Having determined that the facts of this case warrant an award of rehabilitative alimony, we turn our attention to the amount of the award. "The amount of alimony to be allowed in any case is a matter for the discretion of the trial court in view of the particular circumstances." Ingram v. Ingram, 721 S.W.2d 262, 264 (Tenn. Ct. App.1986). As stated by our supreme court in Aaron v. Aaron, 909 S.W.2d 408 (Tenn. 1995), the real need of the spouse seeking the support is the single most important factor. In addition to the need of the disadvantaged spouse, the courts most often consider the ability of the obligor spouse to provide support. See Cranford v. Cranford, 772 S.W.2d 48, 50 (Tenn. Ct. App.1989).

In the present case, the trial court obviously considered all the relevant factors in determining the amount of alimony, and we will not disturb the court's determination. The award of $1,200 per month serves as a balance between the needs of Wife and the ability of Husband to pay. Therefore, in accordance with the foregoing discussion, we modify the award of alimony *in futuro* to an award of rehabilitative alimony in the amount of $1,200 per month for a period of 48 months.

*II. Family Counseling*

The trial court's decree provided that "the parties and the minor child shall attend family counseling...to improve the communication between the parties." Husband argues that this aspect of the decree exceeded the trial court's authority. Wife, on the other hand, argues that the trial court's authority to order counseling derives from the state's role as *parens patrie.*

T.C.A. § 36-6-101(e)(1) provides some guidance on the present issue. That section states:
>    In an action for dissolution of marriage involving minor children, or in a post-judgment proceeding involving minor children, if the court finds, on a case by case basis, that it would be in the best interest of the minor children, the court may on its own motion, or on the motion of either party, order the parties, excluding the minor children, to attend an educational seminar concerning the effects of the dissolution of marriage on the children. The program may be divided into sessions, which in the aggregate shall not exceed four (4) hours in duration. The program shall be educational in nature and not designed for individual therapy.

Under the aforementioned statute, a trial court may order the parties, excluding the minor children, to attend an educational seminar concerning the effects of the dissolution of the marriage on the

___

severing the ties between the parties. In light of the animosity that exists, we consider this to be a desirable result and absolutely in line with the goal the legislature contemplated when expressing a preference for rehabilitative alimony.

children. However, that section is inapplicable to the present case for several reasons. First, the counseling in the present case appears to have been ordered for therapeutic reasons rather than educational reasons and, contrary to the statute, included the minor child. Second, T.C.A. § 36-6-101(e)(1) contemplates sessions of limited duration, specifically no more than four (4) hours in duration. In the present case, no time limitation was imposed or, it appears, even contemplated. Finally, and perhaps most importantly, T.C.A. § 36-6-101(e)(1) only applies where a minor child is involved. In the present case, the parties' child has reached the age of majority, thereby rendering T.C.A. § 36-6-101(e)(1) completely inapplicable. Similarly, we find the authority cited by Wife to be irrelevant to the present issue. Hence, we can discern no basis justifying the trial court's decision on this issue. Accordingly, we vacate that part of the final divorce decree which ordered the parties to attend family counseling.

### III. Attorney's Fees

The final issue raised in this appeal relates to attorney fees. Husband alleges that the trial court erred in: 1) awarding Wife $3,500 as alimony *in solido* for payment of her attorney fees and 2) declining to award him his attorney fees incurred in seeking child support from Wife.

The decision to award attorney's fees lies within the sound discretion of the trial judge, <u>see</u> <u>Aaron v. Aaron</u>, 909 S.W.2d 408, 411 (Tenn. 1995), and this court will not interfere with the trial judge's decision unless the evidence preponderates against it. <u>See</u> <u>Batson v. Batson</u>, 769 S.W.2d 849, 862 (Tenn. Ct. App.1988). A party is entitled to attorney's fees when he or she lacks sufficient funds to pay his or her legal expenses or would find it necessary to deplete other assets to do so. <u>See</u> <u>Brown v. Brown</u>, 913 S.W.2d 163, 170 (Tenn. Ct. App.1994); <u>Kincaid v. Kincaid</u>, 912 S.W.2d 140, 144 (Tenn. Ct. App.1995). The record indicates that the amount the trial court awarded was substantially less than the total amount of attorney fees owed by Wife. Considering the relative financial position of the parties, we do not believe the evidence to preponderate against the trial court decision awarding Wife $3,500 as alimony *in solido* and we, therefore, reject the argument that it should be disturbed.

Husband also claims that the trial court erred in failing to award him attorney fees incurred in seeking a change of custody and child support. He cites to T.C.A. § 36-5-103(a)(2)(c) in support of his claim that he was entitled to recover his attorney fees.[8] However, that statutory authority is

---

[8] That section provides:

> The plaintiff spouse <u>may</u> recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded <u>may</u> recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, <u>in the discretion of such court</u>.

permissive, as indicated by its use of the word "may." Moreover, the statute clearly states that the award is within the discretion of the trial court. Once again considering all relevant facts, including the financial disparity between the parties, we find no abuse of that discretion in the present case.

### Conclusion

For the foregoing reasons, we modify the trial court decision relating to the alimony award. Additionally, we vacate the order of the trial court requiring the parties to attend family counseling. In all other respects, we affirm the trial court decision. Costs of this appeal are taxed to Husband, Michael Alan Totty, for which execution may issue if necessary.

---

(Emphasis added)