IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 25, 2003 Session

## SARAH CARLETON HIGH (NUCKOLLS) v. JAMES ROSCOE HIGH

**Direct Appeal from the Chancery Court for Madison County**
**No. 46094     Joe C. Morris, Chancellor**

---

**No. W2001-01558-COA-R3-CV - Filed July 8, 2003**

---

This case involves an appeal from the trial court's determination of Appellant's child support and alimony arrearages, as well as the denial of a request to modify a previous award of alimony and child support. We affirm in part, reverse in part, and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part; Reversed in part; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY KIRBY, J., joined.

Jeffrey L. Levy, Nashville, Tennessee, for the appellant, James Roscoe High.

L. L. Harrell, Jr., Trenton, Tennessee, for the appellee, Sarah Carleton High (Nuckolls).

**OPINION**

This is not the first time these parties have been before this Court. The facts of the case, as presented in *High v. High*, No. 02A01-9804-CH-00112, 1999 Tenn. App. LEXIS 871, at *1 (Tenn. Ct. App. Dec. 28, 1999), ("*High I*"), are as follows:

> The parties . . . were divorced by an order entered March 24, 1992. That order awarded custody of the parties' minor children to the mother, Sarah Carleton High, and decreed that the father, James Roscoe High, pay $2,500 in monthly child support, that he pay hospitalization insurance and that he pay all medical, dental, optical and prescription medication expenses not covered by insurance. The trial court also ordered High to pay the children's private school expenses and summer camp costs. Moreover, the trial court made an equitable division of property and ordered James High to pay Sarah High $3,000 in monthly alimony. Subsequently, the parties entered into an agreed order to reduce child support to $2,000 per month.

On July 21, 1993, James High filed in the trial court a motion to modify the final decree of divorce due to his incarceration. High sought relief from his obligation to pay alimony, child support and other financial obligations arising under the final decree and the agreed order. On January 27, 1995, the trial court found that High was $102,000 in arrears in his child support and alimony obligations, and decreed:

> 1. The Motion of the defendant to suspend the child support and alimony is hereby granted by consent and that the defendant shall not be obligated to make any further alimony or child support payments as long as he is incarcerated and without income.

On May 30, 1996, Sarah High filed a petition to set child support, alimony and to reinstate the defendant's support obligations due to the fact that Mr. High had been released from incarceration. By Order entered September 29, 1997, the trial court ordered, *inter alia*, that James High pay $1,000 in monthly alimony and that he pay child support in accordance with the State of Tennessee's guidelines. That order also awarded the plaintiff a $157,070.97 judgment against the defendant for child support and alimony arrearages. The order further provided that payment of the judgment would be deferred until such time as the defendant had no further legal obligation to support the parties' daughter.

On November 20, 1997, the plaintiff filed a petition for citation for contempt arising from the defendant's failure to pay numerous support-related expenses. That petition was erroneously filed under an incorrect docket number. However, the error was corrected by order entered April 7, 1998. Subsequently on December 8, 1997, plaintiff filed a motion for wage assignment.

A hearing on the petition and motion was held on January 28, 1998, and the trial court entered an order on March 2, 1998, which addressed the foregoing petition. That order provided in pertinent part the following:

> BASED UPON THE ABOVE FINDINGS AND THE PREVIOUS FINDINGS OF THE COURT IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

> 1. The defendant is found to be in arrears in his payments for or on behalf of said minor children in the amount of Four Thousand Seven Hundred One Dollars and Ninety Seven Cents ($4,701.97) and further is found to be in arrears in his alimony payments in the amount of Six Thousand Dollars ($6,000.00) for a total of Ten Thousand Seven Hundred One Dollars and Ninety-seven Cents ($10,701.97).

2. The Court does further find that the defendant has not paid on a previous arrearage established by the Court in the amount of Two Thousand One Hundred Twenty Eight Dollars and Twenty Eight Cents ($2,128.28), making a total arrearage due of Twelve Thousand Eight Hundred Thirty Dollars and Twenty Five Cents ($12,830.25) plus attorneys fees of Three Thousand Dollars ($3,000.00) for a total of Fifteen Thousand Eight Hundred Thirty Dollars and Twenty Five Cents ($15,830.25).

3. It is further ordered that a wage assignment shall issue and be served upon the defendant's employers . . . . That said wage assignment should be levied equally upon each employer unless the income received by the defendant is different, in that event, then said wage assignment shall be apportioned upon said employers in accordance with the defendant's income.

4. The Court does further order that the wage assignment in the amount of Nine Hundred Eighty Five Dollars and Eighty Five Cents ($985.85), plus Clerk's commission every other week for said child support and alimony and additional sum of Two Hundred Fifty Dollars ($250.00), plus Clerk's commission every other week for the payment upon the defendant's obligation, which has heretofore been established by the Court.[1]

5. It is specifically found by the Court that it is not addressing a previous arrearage determined to be owing by the defendant for the support of the minor children and plaintiff in the amount of One Hundred Fifty Seven Thousand Seventy Dollars and Ninety Seven Cents ($157,070.97) upon which payment has been deferred until such time as the minor daughter reaches the age where he has no further legal obligation toward her.

6. It is further ordered that the defendant shall continue to make the payments as heretofore ordered by the Court for the expenses of the minor children and further that he is to secure

[1] The total garnishment every other week is $1,235.85, which is comprised of current child support in the amount of $524.31, current alimony in the amount of $461.54, and arrearage debt reduction in the amount of $250.00. There is also a clerk's fee set by T.C.A. § 8-21-401, which is in addition to the garnishment amount.

life insurance as heretofore ordered by the Court and to comply with all previous orders of the Court.

7. It is further ordered that the costs of these proceedings are taxed to the defendant, James Roscoe High, for which execution shall issue, if necessary.

*Id.* at *1-*6 (footnote in original).

In *High I* we determined the percentage of Appellant's wages which could properly be garnished to pay his various arrearages and remanded to the trial court with instructions to apply our findings after determining Appellant's net income. *Id.* at *16. Subsequent to our remand the trial court entered an order dated 25 June 2001, which stated the following:

This cause came to be heard on this the 25th day of September, 2000 . . . upon the Supplemental Petition for Contempt filed by the Plaintiff, Answer of the Defendant, *the Petition to modify alimony and to bring child support within guidelines*, and the Order of the Court of Appeals filed December 28, 1999, and the entire record in this cause. (Emphasis added.)

The petition to modify referred to by the trial court was filed December 21, 1998, during the pendency of the *High I* appeal. The trial court's ruling as to this petition forms the basis for two of Appellant's issues on appeal.[2]

In this subsequent petition Appellant claims that Wife is no longer entitled to Alimony in futuro. Appellant argues that the Appellee earns $59,000 a year from employment and also has investment income and is, therefore, no longer in need of continuing alimony. Appellant further claims that Wife currently has significant assets, the value of which is in excess of $600,000.00. Appellant maintains that he earns between $60K and $66K a year[3], a large portion of which goes to pay his past and current child support/alimony obligations.

Appellant claims the requirement that he pay for medical/dental expenses, etc. amounts to a deviation from the child support guidelines ("Guidelines"). Appellant asserts that, since the trial court made no specific findings as to why such a deviation is warranted, the award of such expenses is in error and should not stand.

Appellant also questions the trial court's calculation of his child support and alimony arrearages from January 19, 1998 to September 25, 2000. Appellant claims that the evidence shows

---

[2]This Court, in *High I*, affirmed the trial court's rulings relating to Appellant's support obligations as of the date of the order appealed from. Accordingly, absent this subsequent petition, such issues would not properly be before this Court.

[3]The trial court found his income to be $66,000.00 a year.

that he should be given a credit towards arrearages for this time period. The trial court found, however, that he had gone further in arrears during this period. Appellant contends there is no evidence to support the trial court's conclusion.

## *Issues*

Appellant's issues on appeal, as we perceive them, are as follows:

(1)     Whether the trial court erred in finding that there had not been a change in circumstances justifying the termination of alimony.

(2)     Whether Appellant's obligation to provide for medical/dental and other miscellaneous expenses amounts to a deviation from the Guidelines, requiring an explanation from the trial court as to the justification for such a deviation.

(3)     Whether the evidence supports the trial court's conclusion that Appellant's child support and alimony arrearages had increased, as opposed to decreased, as of September 25, 2000.

## *Whether the trial court erred in finding that there had not been a change in circumstances justifying the termination of Alimony.*

Appellant asserts that, since the entry of the final decree of divorce, there has been a substantial and material change in Appellee's circumstances justifying a modification or termination of Appellant's alimony in futuro obligation to Appellee.

## *Standard of Review*

Because modification of a spousal support award is "factually driven and calls for a careful balancing of numerous factors," *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989), a trial court's decision to modify support payments is given "wide latitude" within its range of discretion, *see Sannella v. Sannella*, 993 S.W.2d 73, 76 (Tenn. Ct. App. 1999). In particular, the question of "whether there has been a sufficient showing of a substantial and material change of circumstances is in the sound discretion of the trial court." *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999) (citations omitted). Accordingly, "appellate courts are generally disinclined to second-guess a trial judge's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes." *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998); *see also Goodman v. Goodman*, 8 S.W.3d 289, 293 (Tenn. Ct. App. 1999) ("As a general matter, we are disinclined to alter a trial court's spousal support decision unless the court manifestly abused its discretion."). When the trial court has set

forth its factual findings in the record, we will presume the correctness of these findings so long as the evidence does not preponderate against them. *See, e.g., Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000); *see also* Tenn. R. App. P. 13(d).

*Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001).

### *Criteria for modification*

"[A]n award of alimony in futuro is subject to modification. . . ." *Burlew v. Burlew*, 40 S.W.3d 465, 471 (Tenn. 2001). "[T]he purpose of this form of alimony is to provide financial support to a spouse who cannot be rehabilitated." *Id.* This Court addressed the criteria for modification of an award of alimony in futuro in *Wright v. Quillen*, 83 S.W.3d 768 (Tenn. Ct. App. 2002), where we stated:

> Need is the single most important factor in the initial determination of whether alimony should be awarded, followed by the obligor's ability to pay. *Lancaster v. Lancaster*, 671 S.W.2d 501, 503 (Tenn. Ct. App. 1984). Once alimony has been awarded, the court may order an increase or decrease of the award only upon a showing of a substantial and material changes in circumstances. Tenn. Code Ann. 36-5-101(a)(1); *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989) *overruled on other grounds by Bogan v. Bogan*, 60 S.W.3d 721 (Tenn. 2001). The party seeking the modification has the burden of proving the substantial and material changes which justify it. *Elliot v. Elliot*, 825 S.W.2d 87, 90 (Tenn. Ct. App. 1991). The changes in circumstances must have occurred after the original award. *Brewer v. Brewer*, 869 S.W.2d 928, 935 (Tenn. Ct. App. 1993). Such changes are not material if they were contemplated by the parties at the time of the divorce. *Seal v. Seal*, 802 S.W.2d 617, 620 (Tenn. Ct. App. 1990). A change is considered substantial if it has a significant impact on either the recipient's need or the obligor's ability to pay. *Bogan*, 60 S.W.3d at 728. . . .Once such changes are proved, the petitioning party must then demonstrate that a modification of the award is justified. *Id.* The court should, where relevant, use the criteria provided by Tenn. Code Ann. 36-5-101(d), the criteria on which an initial award is based, to determine whether a modification is warranted. *Id.*; *Cranford*, 772 S.W.2d at 50, *overruled on other grounds by Bogan*, 60 S.W.3d [at] 721. However, the Tennessee Supreme Court has recently held that need is not the single most important factor in the determination of whether a modification is warranted. *Bogan*, 60 S.W.3d at 730. The ability of the obligor to pay must be given equal consideration in the modification context.[4] *Id.* Ordinarily, an increase in income does not constitute a change which, without more,

---

[4]The Court held: "Accordingly, to the extent that any case would compel giving more weight to the need of the receiving spouse than all other factors in order to modify a support obligation, it is overruled." [*Bogan*, 60 S.W.3d 721 at 730].

justifies a modification of alimony. *Butler v. Butler*, No. 02A01-9702-CH-00038, 1997 WL 576533, at *5 (Tenn. Ct. App. Sept. 18, 1997), (*no perm. app. filed*).

*Wright*, 83 S.W.3d at 772-73 (footnote in original).

At the time of the initial decree, as is the case today, the legislature had made clear "a preference for rehabilitative, temporary support and maintenance rather than long-term support and maintenance." *Amos v. Amos*, 879 S.W.2d 856, 857 (Tenn. 1994); Tenn. Code Ann. § 36-5-101(d). Accordingly, "an ex-spouse [should] be adjudged permanently dependent upon the other only when the court granting the divorce finds that economic rehabilitation is not feasible and long-term support is necessary." *Self v. Self*, 861 S.W.2d 360, 361 (1993). The record does not reflect that any findings were made as to Appellee's potential for rehabilitation. As we noted in *Wright*, however, the Appellant cannot now

> re-litigate matters pertaining to the propriety of the original award of alimony in futuro. Our review concerns only whether unanticipated material and substantial changes have occurred since the divorce, and whether those changes, if any, warrant a modification based on need, ability to pay, and re-application of the statutory criteria found in Tenn. Code Ann. § 36-5-101(d).

*Wright*, 83 S.W.3d at 773.

In determining if a modification of alimony is warranted, Appellant urges this Court to consider the circumstances existing today against those existing in 1992, the time of the initial divorce decree and alimony award.[5] Appellant previously petitioned for a reduction in his alimony obligation, however, which resulted in the alimony payment being reduced from $3,000 a month to $1,000 a month.[6] Accordingly, it is from this date that we must determine "whether there has been a sufficient showing of a substantial and material change of circumstances" warranting modification of the award.[7]

Appellant's petition leading to the aforementioned 1997 modification "allege[d] that [Appellee] [was] gainfully employed and mak[ing] a substantial income such that she [was] not in need of the alimony obligation imposed upon [Appellant] and that [Appellant] [was] not making

---

[5] Appellant asserts that Appellee "has done exceedingly well over the eight and one half years between her divorce and the hearing in this matter and her need for support simply no longer exists." As noted, the proper time frame to be considered is from the entry of the 1997 award of modification to the filing of the current petition, not from the time of the divorce to such filing.

[6] Per an order dated September 29, 1997.

[7] Appellant makes much of the fact that Appellee initially filed for divorce under a pauper's oath. This information was before the court at the time of the 1997 modification, however, and has no bearing on the determination of whether there has been a material and substantial change in circumstances since that time.

sufficient wages to pay both child support and the alimony obligation, along with all medical and other expenses ordered in the Final Decree of Divorce." Appellant's most recent request for modification of his alimony obligation states that Appellant's duty to pay expenses related to the children, which he describes as "dramatically exceed[ing] the Child Support Guidelines," coupled with Appellee's improved financial position, support a modification of the 1997 award. Clearly, such allegations, standing alone, do not represent a substantial and material change in circumstances warranting a modification of the 1997 award for they are essentially the same arguments presented to the court which precipitated the 1997 modification. "A decree concerning alimony . . . is conclusive as to the circumstances existing when it was entered, and the court will not make a new order where the facts at the time of the application for a change are substantially the same as those that were previously adjudicated." *Oman v. Oman*, 1984 Tenn. LEXIS 826 at *5 (Tenn. July 16, 1984) (citing 18 A.L.R.2d 10, 18 (1951)).

This does not end our analysis, however, for Appellant also alleges that Appellee has substantial assets which justify modification of the 1997 award. Appellee admitted[8] having such assets, and valued them at $647,635.00 as of September 22, 2000. These assets were not mentioned in the petition preceding the 1997 award and the record does not reflect whether Appellee had these assets at the time of that award. If these assets were considered by the court in making the 1997 award, their existence would not justify a modification of that award. Conversely, if these assets were not considered by the court, then they may justify a modification.

As noted, the record in this case does not contain sufficient information from which we can determine whether these assets were considered by the trial court at the time of the prior modification. This information is essential to properly determine the propriety of the trial court's denial of Appellant's request for modification of the 1997 alimony award. In cases where such an incomplete record is submitted to this Court, we have stated:

> This Court cannot conduct a *de novo* review without a complete appellate record containing the facts. Therefore, we must presume that the record would have contained sufficient evidence to support the trial court's factual findings. *Sherrod v. Wix*, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992). As this Court stated in *Coakley v. Daniels*, 840 S.W.2d 367 (Tenn. Ct. App. 1992):
>
>> Where the issues raised go to the evidence, there must be a transcript. In the absence of a transcript of the evidence, there is a conclusive presumption that there was sufficient evidence before the trial court to support its judgment, and this Court must therefore affirm the judgment. *McKinney v. Educator and Executive Insurers, Inc.*, 569 S.W.2d 829, 832 (Tenn. Ct. App. 1977). This rule likewise applies where there is a statement of the evidence which is incomplete. The burden is upon the appellant to show that the evidence preponderates

---

[8] In a response dated May 10, 2001.

> against the judgment of the trial court. *Capital City Bank v. Baker*, 59
> Tenn. App. 477, 493, 442 S.W.2d 259, 266 (1969). The burden is
> likewise on the appellant to provide the Court with a transcript of the
> evidence or a statement of the evidence from which this Court can
> determine if the evidence does preponderate for or against the
> findings of the trial court.

> *Coakley v. Daniels*, 840 S.W.2d at 370. Under rule 24 of the Tennessee Rules of
> Appellate Procedure, the appellant has the duty "'to prepare the record which conveys
> a fair, accurate and complete account of what transpired in the trial court with respect
> to the issues which form the basis of the appeal.'" *Nickas v. Capadalis*, 954 S.W.2d
> 735, 742 (Tenn. Ct. App. 1997) (quoting *State v. Boling*, 840 S.W.2d 944, 951 (Tenn.
> Crim. App. 1992)).

*Young v. Mayhew*, No. W2002-00185-COA-R3-JV, 2002 Tenn. App. LEXIS 664, at *5-7 (Tenn.
Ct. App. 2002), (*no perm. app. filed*).

In the case *sub judice*, however, the Appellant asserted at oral argument that many of the
evidentiary materials admitted at the trial level disappeared while in the custody of the trial court.
The Appellee did not dispute this assertion. Accordingly, we remand to the trial court to allow both
parties to offer proof concerning the origin of the aforementioned assets, from which the trial court
may determine if they were within the contemplation of the trial court granting the previous order
of modification. To do otherwise would punish Appellant for acts of third parties over whom he has
no control.

On remand, should the trial court determine that the parties knew of these assets at the time
of the 1997 modification order, then the award should stand as is.[9] If, however, the proof reveals
otherwise, the trial court must then determine whether accumulation of these assets amounts to a
"substantial" change which affects Appellee's need for continuing support at the current level.[10]

If the court determines the existence of a material and substantial change, it must then
determine whether a modification is warranted considering all relevant criteria provided by Tenn.
Code Ann. § 36-5-101(d), the criteria on which an initial award is based. *Cranford*, 772 S.W.2d at
50, *overruled on other grounds by Bogan*, 60 S.W.3d at 728.

---

[9] Such a finding would mean that the change was not a "material" change in circumstances. A material change
in circumstances is one where the change "'occurred since the . . . decree ordering the payment of alimony,' and . . . was
not 'anticipated or [within] the contemplation of the parties at the time they entered into the . . . agreement.'" *Bogan*,
60 S.W.3d 721 at 728 (citations omitted)(alteration in original).

[10] A change is considered substantial if it has a significant impact on either the recipient's need or the obligor's
ability to pay. *Bogan*, 60 S.W.3d at 728. These assets would not have any bearing on Appellant's ability to pay.

***Whether Appellant's obligation to provide for medical/dental and other miscellaneous
expenses amounts to a deviation from the Guidelines, requiring an explanation from the trial
court as to the justification for such a deviation.***

Appellant asserts that certain expenses which he was ordered to pay "represent no more
and no less than an upward deviation in the child support amount." As such, Appellant
maintains, "[i]t was improper for the court to order them to be paid without a specific finding
that the application of the Guidelines . . . would be unjust or inappropriate. . . ." We hold that,
under the facts of this case, such specific findings were not required.

## Standard of Review

In a civil action we review a trial court's findings of fact *de novo* upon the record of the
trial court. Such review is accompanied by a presumption of correctness, unless the evidence
preponderates against such findings. Tenn. R. App. P. 13(d); **Brooks v. Brooks**, 992 S.W.2d
403,404 (Tenn. 1999). "The interpretation and application of Tennessee statutes and Child
Support Guidelines are questions of law that must be reviewed *de novo*." *Hobbs v. Hobbs*, 27
S.W.3d 900, 903 (Tenn. 2000)(citing *Nash v. Mulle*, 846 S.W.2d 803, 804 (Tenn. 1993)).

## Healthcare Expenses.

Appellant asserts that the trial court, by ordering that he be responsible for "all non-
covered medical, dental, hospitalization, optical, psychological, and prescription medication
expenses"of the children,[11] has deviated from the Guidelines. However, the Tennessee Code
provides that "[t]he court . . . may order either party to pay all, or each party to pay a pro rata
share of, the health care costs not paid by insurance proceeds." Tenn. Code. Ann. § 36-5-
101(f)(1). The Code further provides that "[t]he necessity to provide for the child's health care
needs shall also be a basis for modification of the amount of the order, regardless of whether a
modification in the amount of child support is necessary." Tenn. Code Ann. § 36-5-101(a)(1)
(Supp. 2002). As the statute provides that such costs may be ordered without changing "the
amount of child support[,]" these costs are properly viewed as an addition to, as opposed to a
deviation from, the obligor's child support obligation under the Guidelines. Furthermore, neither
of the aforementioned Code provisions requires that the court make specific findings justifying
such an award.

## Health Insurance.

Appellant also asserts that the trial court's order that he maintain "hospitalization
insurance" on the children is a deviation from the Guidelines. The Guidelines presume,
however, that the obligor parent will maintain "health care insurance coverage" for the children,

---

[11] All of these expenses are properly characterized as "healthcare costs," as that term is used in Tenn. Code.
Ann. § 36-5-101(f)(1).

-10-

specifically stating that failure to do so is a "[f]actor justifying [an] upward adjustment[] for support." Tenn. Comp. R. & Regs. 1240-2-4-.02(5) (2003). Accordingly, requiring Appellant to maintain insurance, which the Guidelines presume all obligor parents will do, does not amount to a deviation from the Guidelines requiring specific findings by the court. Interestingly, a review of the record reveals that Appellant acknowledged this fact in a petition dated December 21, 1998, wherein he states "[i]t is acknowledged that the Guidelines envisage payment of health insurance by the non-custodial spouse. . . ." Appellant's understanding of the requirement to provide health insurance was correct then, as it is now.

### *Summer Camp and other miscellaneous expenses.*

Appellant also objects to having to pay for summer camp and other miscellaneous expenses[12], claiming that such expenses amount to a deviation from the Guidelines requiring the trial court to make a specific "finding that the application of the . . . guidelines would be unjust or inappropriate. . . ." Tenn. Code Ann. § 36-5-101(e)(1)(A)(2002); Tenn. Comp. R. & Regs. R. 1240-2-4-.01(3)(2003). We hold that such expenses[13] may, under certain circumstances, be considered a deviation from the Guidelines thus necessitating such findings. For the following reasons, however, we hold that such findings were not required in this case.

### *Application of the Guidelines*

The Guidelines provide that, under certain circumstances, "the court shall increase the award" of child support. Tenn. Comp. R. & Regs. 1240-2-4-.04(1)(2003). The "award" referred to is the base amount of child support that represents "a flat percentage of the obligor's net income." *Barnett*, 27 S.W.3d at 906. Expenses which justify an increase, or deviation, from this base Guideline support include "[e]xtraordinary educational expenses and extraordinary medical expenses not covered by insurance[,]" Tenn. Comp. R. & Regs. 1240-2-4-.04(1)(c)(2003), as well as "other extraordinary expenses for the child(ren) . . . if the court finds that equity requires it." Tenn. Comp. R. & Regs. 1240-2-4-.04(1)(d)(2003). The Guidelines further provide that, after calculating the base award and factoring in any deviations, "this is the amount of the child support award." Tenn. Comp. R. & Regs. 1240-2-4-.03(5)(2003). Payment of this award "may be ordered to be weekly, biweekly (every two weeks), semi-monthly, or monthly." Tenn. Comp. R. & Regs. 1240-2-4-.03(4)(2003).

In the case of *Barnett v. Barnett*, 27 S.W.3d 904 (Tenn. 2002), our Tennessee Supreme Court addressed the issue of how "extraordinary educational expenses" are to be handled under the Guidelines. The *Barnett* court determined that application of the Guidelines "result[s] in the full amount of private school tuition being added to [the obligor's] child support percentage." *Id.*

---

[12] Expenses which do not qualify as extraordinary educational or medical expenses under Tenn. Comp. R. & Regs.1240-2-4-.04(1)(c)(2003).

[13] We are addressing only those expenses which may properly be characterized as "other extraordinary expenses" under Tenn. Comp. R. & Regs. 1240-2-4-.04(1)(d)(2003).

-11-

at 907. The court noted that "the guidelines' use of the word 'shall' leaves a trial court no discretion in adding extraordinary educational expenses to the obligor's computed percentage." *Id.* The *Barnett* court went on to hold that this presumption could be rebutted, and the award reduced, if the equities of the situation warranted such a reduction.

In the present case, however, we are not dealing with "extraordinary educational expenses" but, rather, "*other extraordinary expenses.*" Unlike private school tuition,"other extraordinary expenses," such as "summer camp,"[14] are not expenses mandated by the Guidelines to be borne solely by the obligor unless "the court finds that equity requires it." Tenn. Comp. R. & Regs. 1240-2-4-.04(1)(d)(2003).

Accordingly, in the case of extraordinary educational or medical expenses, which the Guidelines provide "shall" be paid by the obligor, the obligor must rebut the presumption of full responsibility in order to reduce the award. *See Lane v. Lane*, No. M2000-01135-COA-R3-CV, 2001 Tenn. App. LEXIS 876, at *6 (Tenn. Ct. App. Nov. 30, 2001), *perm. app. denied*, (Tenn. Apr. 29, 2002)(finding that "[t]he[re] [is a] presumption that the percentage amount of child support plus extraordinary educational expense is the correct amount of child support [unless] rebutted."). If the obligor successfully rebuts this presumption, a downward deviation from the Guidelines is proper. Such deviation requires of the trial court "a written finding that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child(ren) or the equity between the parties." Tenn. Code Ann. § 36-5-101(e)(1)(A)(2002); Tenn. Comp. R. & Regs. 1240-2-4-.01(3)(2003).

In the case of "other extraordinary expenses," however, the opposite is true. As noted, the Guideline presumption is that the obligor will not bear these expenses. Therefore, when an obligor parent is ordered to pay some or all of such expenses, the result is a deviation from the Guidelines. Such a deviation, in turn, triggers the requirement of "a written finding that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child(ren) or the equity between the parties." Tenn. Code Ann. § 36-5-101(e)(1)(A)(2002); Tenn. Comp. R. & Regs. 1240-2-4-.01(3)(2003).

Furthermore, the Guidelines prescribe that a deviation from the base child support award will manifest itself as an addition to, or reduction from, the presumed Guideline award.[15] In the present case, Appellant was ordered to "pay all summer camp expenses for the parties' minor

_____

[14] We do not foreclose the possibility that attendance at summer camp could be considered an "extraordinary educational expense." This should be determined on a case by case basis and consider such factors as the expressed purpose of the camp, activities offered, etc. In the present case there is no indication in the record that the "summer camp" was of an educational nature.

[15] In the case of extraordinary educational or medical expenses, where the Guidelines presume that the obligor will pay the entire expense, a deviation would result in a reduction of the amount of support the Guidelines envision the obligor will pay. Conversely, in the case of "other extraordinary expenses," the deviation results in an increase in the amount envisioned by the Guidelines.

children."[16]  No amount was added to Appellant's base child support obligation to cover this expense.[17]  As such, this expense cannot properly be viewed as part of Appellant's child support obligation under the Guidelines.[18]

In short, we do not believe that summer camp expenses, or any expenses which cannot be easily categorized as "extraordinary educational expenses [or] extraordinary medical expenses" will always constitute "child support." Where such expenses are quantified and added to the periodic payment of base child support,[19] however, they may properly be viewed as "child support," as that term is used within the Guidelines.  Where "other extraordinary," expenses are added to the obligor's base child support obligation, the result is a deviation from the Guideline presumption and, therefore, specific findings by the trial court are required.  Conversely, where the payment of such expenses is not included as an increase in the obligor's base child support amount the payment of such expenses is not part of the obligor's "child support" obligation.

Whether payments required to be made by an obligor parent are properly characterized as "child support" is a question of no small importance for, "whe[re] the husband and wife contract with respect to the legal duty of child support, [determined by application of the Guidelines], upon approval of the contract, the agreement of the parties becomes merged into the decree and loses its contractual nature." *Penland v. Penland*, 521 S.W.2d 222, 224 (Tenn. 1975).  This allows the court "to make subsequent orders where circumstances warrant." *State ex rel. Wrzesniewski v. Miller*, 77 S.W.3d 195, 197 (Tenn. Ct. App. 2001).  Accordingly, only where the Guideline requirement of  "a computation of the support obligation" is met,[20] do such expenses

---

[16] Awarding unquantified future expenses as part of an obligor's total child support award makes it difficult, if not impossible, for a trial court to subsequently determine if a "significant variance" exists which would warrant a modification of that award. *See* Tenn. Code Ann. 36-5-101(a)(1)(2001); Tenn. Comp. R. & Regs. 1240-2-4-.02(3)(2003). The Guidelines proscribe that such expenses be added to the base Guideline support to arrive at the total child support award. When this procedure is followed, and a specific sum of total support is arrived at, a court may, at a future date, easily determine whether a significant variance exists warranting a modification of the award.

[17] The Guidelines presume that any award will be added to the base child support award and be paid periodically, rather than as a lump sum. Our Tennessee Supreme Court has approved of lump sum payments of child support in limited circumstances, however. Such an award may be proper when "awarded . . . to address the *present, specific needs* of the child." *Hobbs v. Hobbs*, 27 S.W.3d 900, 904 (Tenn. 2000)(emphasis added). As none of the expenses objected to by Appellant meet this criteria, a lump sum payment would not have been proper in this instance.

[18] "The guidelines must be based on specific descriptive and numeric criteria *and result in a computation of the support obligation*." Tenn. Comp. R. & Regs. 1240-2-4-.01(1)(2003). Requiring the obligor to pay "summer camp expenses," or any other extraordinary expense, without quantification, does not allow the trial court to arrive at the proper "computation of the support obligation" mandated by the Guidelines.

[19] We agree with the Missouri Supreme Court that "[s]ummer camp expenses are foreseeable and their expense is reasonably determinable. . . ." *Krane v. Krane*, 912 S.W.2d 473, 476 (Mo. 1995).

[20] This is accomplished by quantifying these expenses and adding them to the base child support amount to arrive at the obligor's total child support obligation.

-13-

constitute a percentage of the obligor's "legal duty of child support," thus allowing the court to make subsequent modifications to the award.

As discussed, however, the Guidelines do not mandate that an obligor pay such "other extraordinary expenses." The Guidelines instead provide that such expenses "may" justify an increase in the amount of support awarded. Accordingly, we see no reason why parties cannot, as here, enter into an agreement outside the purview of the Guidelines outlining by whom, and in what manner, such expenses will be paid. If the parties choose this route, then such expenses are properly viewed, not as child support, but as a "voluntarily assumed obligation exceeding the minimum support required [which] is controlled exclusively by the parties' agreement." *Haas v. Haas*, No. 02A01-9604-CV-00073, 1997 Tenn. App. LEXIS 269, at *10 (Tenn. Ct. App. Apr. 22, 1997), (*no perm. app. filed*).

In the present case, as discussed, such "other extraordinary expenses" were not added to Appellant's base child support obligation. Instead, Appellant agreed, per an agreed order, to be responsible for these expenses.[21] Appellant's acceptance of the agreed order to modify the divorce decree had the effect of an acceptance of all terms of the final decree, as modified, including the payment of such extra expenses. Accordingly, Appellant cannot appeal this issue.[22]

### *Calculation of Child Support and Alimony Arrearages*

Appellant takes issue with the trial court's calculation of his support arrearages. The expenses presented to the trial court by the Appellee upon which the determination of arrearages was based include amounts relating to summer camp, school supplies,[23] and other items which we have determined do not constitute "child support" under the Guidelines. These expenses, therefore, cannot properly be added to Appellant's child support arrearage. Accordingly, we

---

[21] Appellant filed a motion to modify the final decree to reflect, *inter alia*, changes in the amount of child support. Presumably, Appellant did not take issue with such additional expenses at that time or he would have moved for modification of those provisions as well.

[22] "[A]greed orders of settlement are generally not appealable, but they are reviewable or modifiable by proper action taken *within the time for appeal*." In re *Estate of Williams*, No. M2000-02434-COA-R3-CV, 2003 Tenn. App. LEXIS 313, at *35 (Tenn. Ct. App. Apr. 28, 2003)(emphasis added).

[23] The Batson court held that the cost of private school tuition was an "extraordinary educational expense" because it "exceeds or departs from the cost of public schooling." Batson, 27 S.W.3d 904 at 907. School supplies are required of all children attending school, either public or private. Such costs, therefore, do not "exceed[] or depart[] from the cost of public schooling[.]." *Id*. As such, they cannot properly be categorized as "extraordinary educational expenses." Nor do we believe that they can properly be categorized as "other extraordinary expenses," thereby allowing them to be added to an obligor's base child support obligation. We believe, rather, that the cost of such expenses was considered by the Department of Human Services when promulgating the Guidelines. *See Cole v. Cole*, No. 02A01-9407-CH-00162, Tenn. App. LEXIS 512, at *6 (Tenn. Ct. App. Aug. 1, 1995), *no perm. app. filed*, (finding that daycare expenses were not "extraordinary expenses" justifying a deviation from the Guidelines, as these costs were presumably considered by the drafters of the Guidelines.). The parties may, of course, reach agreement as to who shall bear such expenses outside the purview of the Guidelines, which was the case here.

-14-

remand for a new determination of the amount of child support arrearages owed by defendant for the period in question, January 28, 1998 to September 25, 2000.

### *Conclusion*

We find the record before us insufficient to allow us to determine the propriety of the trial court's denial of a modification of Appellant's alimony obligation. We, therefore, remand the cause to the trial court to allow the parties to present evidence, consistent with this opinion, concerning this issue. We further hold that the trial court did not deviate from the Guidelines by requiring Appellant to be responsible for the various expenses cited herein. Accordingly, the trial court was not required to make specific findings as to why it was appropriate to deviate from the Guidelines. In addition, we hold that, under the facts of this case, certain expenses which Appellant agreed to pay do not constitute "child support" under the Guidelines. Accordingly, on remand, the trial court must make a new determination of Appellant's child support arrearrages for the period of January 28, 1998 to September 25, 2000.

The costs of this appeal are taxed equally to the Appellee, Sarah Carleton High (Nuckolls), and the Appellant, James Roscoe High, and his surety, for which execution, if necessary, may issue.

_____
DAVID R. FARMER, JUDGE