# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### January 17, 2012 Session

## BARBARA JEAN HOOPER FLYNN v. ROBERT DEAN FLYNN

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-005269-00      Donna Fields, Judge**

---

**No. W2011-01138-COA-R3-CV  - Filed January 27, 2012**

---

The trial court denied Husband's petition to modify alimony upon finding he was voluntarily underemployed, and found him to be in civil contempt. We vacate the finding of voluntary underemployment, affirm the finding of contempt, and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated in part, Affirmed in part and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

C. Suzanne Landers and Carrie Eaker Kerley, Memphis, Tennessee, for the appellant, Robert Dean Flynn.

Mitchell D. Moskovitz, Zachary M. Moore and Adam N. Cohen, Memphis, Tennessee, for the appellee, Barbara Jean Hooper Flynn.

## OPINION

The dispositive facts of this case are largely undisputed. Barbara Jean Hooper Flynn (Ms. Flynn) and Robert Dean Flynn (Mr. Flynn) were married in 1975 and divorced in 2003. Under the parties' MDA, Mr. Flynn was obligated to pay alimony *in futuro* until death or remarriage in the amount of $12,000 per month until sale of the parties' marital home; $9,000 per month until Ms. Flynn reached the age of 66; and $6,000 per month thereafter. Mr. Flynn also was obligated to name Ms. Flynn beneficiary under a life insurance policy with a $900,000 death benefit for the term of the alimony obligation. Mr. Flynn is an attorney and was an equity partner in Spicer, Flynn and Rudstrom ("SFR") at the time of the divorce.

Mr. Flynn married his current wife, Michelle Howard Flynn (Ms. Howard Flynn), in

2004. Ms. Howard Flynn practiced with SFR's Nashville office prior to the marriage, and began her own practice in Memphis shortly thereafter. Mr. Flynn assisted Ms. Howard Flynn with a number of law suits, which resulted in conflict between Mr. Flynn and his partners in SFR. In 2009, Mr. Flynn was expelled from SFR as a result of the conflict caused by his involvement with Ms. Howard Flynn's practice. In February 2009, Mr. Flynn and his partners executed an Equity Member Departure Agreement and Release. Mr. Flynn immediately joined his wife's law firm, the Howard Flynn Law Group ("Howard Flynn").

In February 2010, Mr. Flynn filed a petition to modify the final decree of divorce to terminate or reduce his alimony obligation. In his petition, Mr. Flynn asserted that a material and substantial change in circumstance had occurred such that a modification of alimony was appropriate. Ms. Flynn filed an answer and counter-petition for civil and criminal contempt in April 2010. Ms. Flynn denied Mr. Flynn's assertion and alleged that Mr. Flynn had failed to pay alimony since February 2010. She further alleged that Mr. Flynn had failed to maintain the life insurance policy required by the parties' MDA, and prayed for a finding of criminal and civil contempt and attorney's fees. Mr. Flynn answered Ms. Flynn's counter-petition in February 2011. In his answer, Mr. Flynn denied Ms. Flynn's allegations that he was in contempt, and asserted that Ms. Flynn had failed to notice him of her allegations of criminal contempt as required by Rule 42(b) of the Tennessee Rules of Criminal Procedure. He moved for dismissal of Ms. Flynn's counter-petition.

The matter was heard by the trial court on February 11, 2011. By order entered March 30, 2011, the trial court found that Mr. Flynn is willfully underemployed, and ordered him to continue paying alimony as agreed in the parties' MDA. The trial court determined that Ms. Flynn had voluntarily dismissed her claim for criminal contempt. By order entered September 8, 2011, the trial court dismissed Ms. Flynn's claim for criminal contempt, and granted her claim for civil contempt. The trial court ordered Mr. Flynn to pay back alimony in the amount of $89,500.00 to Ms. Flynn for arrearages through February 28, 2011. The trial court awarded Ms. Flynn attorney's fees in the amount of $15,000, and assessed costs against Mr. Flynn. Mr. Flynn filed a timely notice of appeal to this Court.

### *Issues Presented*

Mr. Flynn presents the following issues, as slightly reworded, for our review:

(1)    Whether the trial court erred in its failure to terminate or reduce Husband's alimony obligation.

(2)    Whether the trial court erred in finding Husband in civil contempt.

(3) Whether the trial court erred in awarding Wife $15,000 in attorney fees.

Ms. Flynn raises the additional issue of whether she should have been awarded all of her attorney's fees, and prays for attorney's fees on appeal.

### *Discussion*

We turn first to Mr. Flynn's assertion that the trial court erred in failing to reduce or terminate his alimony obligation. A court may not modify an award of spousal support absent a finding that a substantial and material change in circumstances has occurred since the award was entered. *Bogan v. Bogan*, 60 S.W.3d 721, 727-28 (Tenn. 2001). Generally, a change in circumstances is considered "material" when it (1) occurred after entry of the original decree and (2) was not anticipated by the parties when the order was entered. *Id.* (citations omitted). " [A] change in circumstances is considered to be 'substantial' when it significantly affects either the obligor's ability to pay or the obligee's need for support." *Id.* (citations omitted). Demonstrating that a substantial and material change in circumstances has occurred does not automatically entitle the petitioner to a modification of the alimony award. *Wright v. Quillen*, 83 S.W.3d 768, 772 (Tenn. Ct. App. 2002). The decision to modify an award of spousal support is "'factually driven and calls for a careful balancing of numerous factors[.]'" *Bogan*, 60 S.W.3d at 727 (quoting *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989)). Accordingly, we review a trial court's decision to modify an award of support, or not, as the case may be, under an abuse of discretion standard. *Id.* (citations omitted).

In this case, the trial court made no specific findings with respect to whether a material and substantial change in circumstance had occurred. In her brief to this Court, Ms. Flynn asserts Mr. Flynn's change in employment does not constitute a substantial and material change because there is nothing in the record to support a finding that Mr. Flynn does not have the capacity to earn the income he earned with SFR. She further argues that any change is not substantial because he still has the ability to pay alimony as ordered in the final decree of divorce. Ms. Flynn asserts that Mr. Flynn receives only 45% of his collections with Howard Flynn, and that the remaining 55% are retained by the firm, which is wholly controlled by Ms. Howard Flynn. Ms. Flynn asserts that Mr. Flynn "has a very good reputation as a practicing lawyer." She submits that Mr. Flynn remained with the same firm from 1977 until his "expulsion" in 2009; that the firm ultimately would be named Spicer, Flynn and Rudstrom; and that Mr. Flynn was "the leading biller for any of the equity partners and most of the non-equity attorneys."

Although the parties disagree with respect to the extent to which Mr. Flynn may be faulted for the events giving rise to his expulsion from SFR, Ms. Flynn's argument, as we

perceive it, does not support a conclusion that a substantial and material change in circumstances has not occurred. Rather, her argument appears to be that whatever change may have occurred, an award of alimony is not justified because any such changes result from the willful actions of Mr. Flynn; that Mr. Flynn chose to work for Howard Flynn and did not seek employment with greater compensation; and that Mr. Flynn has the capacity to continue to pay alimony as ordered. Upon review of the record, in light of the undisputed circumstances, it cannot be reasonably disputed that Mr. Flynn's circumstances have changed substantially and materially in ways that were not anticipated at the time the MDA was entered. Thus we turn to the trial court's determination that Mr. Flynn is willfully and voluntarily underemployed, and that a modification of alimony accordingly in not warranted.

The determination of willful and voluntary underemployed is a highly fact-driven inquiry that must take all attendant circumstances into account. *Richardson v. Spanos*, 189 S.W.3d 720, 726 (Tenn. Ct. App. 2005)(citations omitted). Accordingly, we review the trial court's determination in accordance with Rule 13(d) of the Tennessee Rules of Appellate Procedure, presuming the trial court's findings of fact to be correct unless the evidence preponderates otherwise. *Id.* We give substantial deference to the trial court's determination, particularly when it is based on its assessment of witness credibility. *Id.* (citations omitted).

Ms. Flynn contends that the trial court's finding of willful and voluntary underemployment is based on its assessment of Mr. Flynn's credibility with respect to the events leading to his expulsion from SFR, and his decision to accept a much lower-paying position in his wife's law firm. Ms. Flynn contends that the trial court determined that Mr. Flynn's decision to work with his wife without at least attempting to seek employment with a comparable income was not made in good faith. Mr. Flynn, on the other hand, asserts he was devastated after being expelled from SFR, and that his decision to work with Ms. Howard Flynn to build her practice was not made in bad faith. Mr. Flynn cites *Wilson v. Wilson*, 43 S.W.3d 495 (Tenn. Ct. App. 2000) for the proposition that "willful or voluntary unemployment or underemployment must result from the intent on the part of the [party] to reduce or terminate his or her income." He asserts that his choices did not result from an intent to reduce his income, but from a choice to pursue opportunities for immediate income and to expand and build a practice at Howard Flynn.

In the context of child support modification, we have stated that, "'[a] determination of willful and/or voluntary underemployment or unemployment is not limited to choices motivated by an intent to avoid or reduce the payment of child support. The determination may be based on any intentional choice or act that adversely affects a parent's income.'" *Miller v. Welch*, 340 S.W.3d 708, 712 (Tenn. Ct. App. 2010)(quoting Tenn. Comp. R. & Regs. § 1240-02-04-.04(3)(a)(2)(ii)(I)). However, when a parent's choice to work in a

lower-paying job is reasonable and in good faith, the courts will not find the parent to be willfully and voluntarily underemployed. *Id*.

In this case, Mr. Flynn's income while with SFR was $400,000 to $500,000 per year. In 2010, his income from Howard Flynn was approximately $130,000. Further Mr. Flynn asserts he has no savings, no retirement, and no investment accounts; that his insurance policies are term policies with no cash value; and that he has used all his assets and acquired debt to pay his alimony obligations.

As the trial of this matter in February 2011, the trial court stated:

> it is clear . . . that Mr. Flynn made a choice or a decision to spend time, Spicer, Flynn & Rudstrom time and energy to assist and be with his present wife . . . .
>
> . . . . That's just clearly Mr. Flynn enjoying the company and assisting his wife because she's requested him to do.

The trial court further questioned Mr. Flynn's status and fee arrangement with Howard Flynn, noting that attorneys of Mr. Flynn's status may become a partner immediately upon joining a firm. The court further stated:

> This Court believes from the proof that has been presented that there is more money in that firm that belongs to you, and there is a structure in that corporation that keeps you in a financially advantageous position to the firm. . . .
>
> . . . .
>
> Mr. Flynn has not compromised his lifestyle.

Mr. Flynn testified at the trial of this matter that he receives 45% of the fees he generates, and that the remainder is retained by Howard Flynn. He further testified that his wife's law firm "[i]s her." Mr. Flynn also acknowledged that his wife, who has far less experience than he in the practice of law, earns far greater than he currently does. Mr. Flynn acknowledged that Ms. Howard Flynn had been practicing for about ten years; that Ms. Howard Flynn is the only shareholder of Howard Flynn, a PLLC; and that his collectibles were $300,000 in 2010.

In his brief to this Court, Mr. Flynn asserts the trial court erred in considering Ms. Howard Flynn's resources. Upon review of the entire record in this case, however, we believe the reasonableness of Mr. Flynn's choices must take into account the entirety of the circumstances. There is no proof in the record to demonstrate that Mr. Flynn's choice to join his wife in building Howard Flynn was unreasonable *per se.* Mr. Flynn was, as Ms. Flynn agrees, an accomplished attorney with the ability to generate substantial fees. His expulsion from SFR was not voluntary, and it is not unreasonable, given the totality of the circumstances, for him to choose to build a new practice. Mr. Flynn testified that he works in excess of 2000 hours per year; Ms. Flynn does not dispute this assertion. Mr. Flynn also testified that he continues to reside in a home valued in excess of one-million dollars.

Although it is not disputed that Mr. Flynn did not seek employment with other firms that would provide income comparable to that he received while at SFR, there is nothing in the record to dispute Mr. Flynn's assertion that when he left SFR, he lost his clients and that his best option was to help Ms. Howard Flynn build the Howard Flynn Law Group. It is also not disputed that Mr. Flynn received a considerable sum upon leaving SFR, and that he has maintained his lifestyle. Mr. Flynn also does not dispute that Howard Flynn retains 55% of his fees, that Ms. Howard Flynn is the sole owner of the firm, and that he accordingly benefits from the amount of compensation which flows to the firm and to Ms. Howard Flynn.

The real issue in this case, as we perceive it, is whether Mr. Flynn accepted a lower fee structure at a far less well established firm, one exclusively owned by his wife, thereby manipulating his income. In short, the question in this case is whether Mr. Flynn, who has practiced law since 1975 and was a named partner in a highly successful practice, is manipulating his income by choosing to work at a much lower salary in a firm solely owned by his wife, who has been practicing law for approximately ten years. We have noted the difficulty in determining the true income of an obligor spouse who is in an employment situation in which he or she can manipulate the amount of income received. *E.g., Allen v. Allen*, No. M1999-00748-C0A-R3-CV, 2000 WL 1483389 (Tenn. Ct. App. Oct. 10, 2000); *Eatherly v. Eatherly*, No. M2000-00886-COA-R3-CV, 2001 WL 468665 (Tenn. Ct. App. May 4, 2001). We have noted, moreover, that to correct a situation wherein an obligor spouse accepts a low-paying job to avoid an alimony obligation, the support obligation will be determined by that spouse's earning capacity. *E.g., Lane v. Lane*, M2008-02802-COA-R3-CV, 2009 WL 3925461, at *6 (Tenn. Ct. App. Nov. 17, 2009)(citations omitted). In *Sandusky v. Sandusky*, we observed that, when an obligor spouse is in an employment situation wherein he or she can control the salary he or she receives, issues may arise that require the court to examine "'whether the potential exists for the obligor to manipulate his reported income either by failing to aggressively solicit business or by inflating his expenses, thereby minimizing his income.'" *Sandusky v. Sandusky*, No. 01A01-9808-CH-00416, 1999 WL 734531, at *4 (Tenn. Ct. App. Sept.22, 1999)(quoting *Beem v. Beem*, No.

02A01-9511-CV-00252, 1996 WL 636491, at *4 (Tenn. App. Nov.5, 1996) (*no perm. app. filed*). We also noted that income can be manipulated in a number of ways, including paying the obligor spouse a lower salary, not paying dividends, and permitting a self-owned business to accumulate and retain earnings. *Id.* We stated, "[w]here a business is solely owned, the company's accumulation of retained earnings can be considered in determining the income available to the sole shareholder who has set his or her own salary." *Id.* (citing *see Higgs v. Higgs*, No. 01A01-9702-CV-0057, 1997 WL 691530, at *3 (Tenn. Ct. App. Nov.7, 1997)(in arguing his alimony obligation should be reduced, husband relied upon his salary, ignoring the fact that the retained earning of his corporation were available to him); *Needham v. Needham*, No. 03A01-9706-GS-00221, 1997 WL 789953, at *7 (Tenn .App. Dec.23, 1997), *perm. app. denied* (Tenn. June 22, 1998) (in determining whether husband's solely owned company's value had increased, the court observed that had husband paid himself dividends and larger salary, they would have been marital property)). In this case, an equal potential for income manipulation exists where Mr. Flynn is employed in a law firm solely owned by his wife.

Although the trial court's comments during the hearing of this matter indicate that the court believed Mr. Flynn was manipulating his income, the trial court made no specific findings upon which to base its findings of voluntary underemployment. Moreover, although Mr. Flynn undisputedly earned upwards of $400, 000 per year as an equity partner at SFR, there is nothing in the record to demonstrate that he could command such an income after being expelled from the firm after more than thirty years of practice, retaining no clients. We accordingly vacate the finding of voluntary underemployment, and remand for further proceedings, including further discovery, if necessary, to determine whether Mr. Flynn is, in fact, manipulating his income so as to shift income to Ms. Howard Flynn and avoid his alimony obligation. Upon remand, we instruct the trial court to make specific findings of fact as required by Rule 52.01 of the Tennessee Rules of Civil Procedure.

We next turn to whether the trial court erred in finding Mr. Flynn to be in civil contempt. Four elements are required to support a finding of civil contempt.

> First, the order alleged to have been violated must be "lawful." Second, the order alleged to have been violated must be clear, specific, and unambiguous. Third, the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order. Fourth, the person's violation of the order must be "willful."

*Konvalinka v. Chattanooga-Hamilton County Hosp. Authority*, 249 S.W.3d 346, 354-55 (Tenn. 2008)(footnotes omitted). In this case, Mr. Flynn asserts the trial court erred in finding him in contempt because his failure to pay was not willful where he did not have the

ability to pay the support as ordered.

For the purpose of a finding of civil contempt, willfulness may be found where a person acts "contrary to a known duty." *Id.* at 357 (citations omitted). In order for the court to find that an obligor spouse's failure to pay alimony was contemptuous, the court first must determine that the obligor had the ability to pay at the time the support was due. *Hawk v. Hawk*, 855 S.W.2d 573, 583 (Tenn. 1993). Failure to comply with a support order establishes a *prima facie* case of civil contempt against the obligor because "'in the original decree the court has necessarily found a present ability to pay.'" *State ex rel Tucker v. Simmons*, No. W2011–00556–COA–R3–JV, 2011 WL 4552282, at *2 (Tenn. Ct. App. Oct. 4, 2011)(quoting *Chappell v. Chappell*, 261 S.W.2d 824, 831 (Tenn. Ct. App.1952)(citing *Clark v. Clark*, 278 S.W. 65 (Tenn.1925); *Gossett v. Gossett*, 241 S.W.2d 934 (Tenn. Ct. App.1951))). After a violation of the support order has been shown, the obligor bears the burden of demonstrating his or her inability to make the payments as ordered. *Id.* (citations omitted). If the obligor proves that he or she is unable to pay, and that such inability has not resulted from "willful impoverishment," the burden shifts to the recipient to demonstrate that the obligor is able to perform. *Id.* (citations omitted). Upon determining that the obligor had the ability to pay, the court may, at its discretion, hold the obligor in contempt. *Hawk v. Hawk*, 855 S.W.2d 573, 583 (Tenn. 1993). We review the court's decision under an abuse of discretion standard. *Id.*

Upon review of the record, the trial court implicitly found that Mr. Flynn had the ability to pay support arrearages in the amount of $89,500 for alimony arrearages through February 28, 2011, where it found Mr. Flynn to be voluntarily underemployed. Additionally, although it held Mr. Flynn in civil contempt, the trial court imposed no penalty other than ordering Mr. Flynn to pay the arrearage amounts. The trial court set a payment schedule ordering Mr. Flynn to pay Ms. Flynn an initial lump sum in the amount of $20,000, followed by monthly payments in amount of $2,000 beginning June 1, 2011, plus interest at the rate of ten percent per annum, until paid in full. The evidence contained in the record does not preponderate against the trial court's finding that Mr. Flynn had the ability to pay the support when it was due. We find no abuse of discretion on the part of the trial court.

We turn finally to the award of attorney's fees in this case. A trial court's decision to award attorney's fees as to a party defending a petition to modify is considered an award of alimony. *Evans v. Young*, 280 S.W.3d 815, 827 (Tenn. Ct. App. 2008)(citation omitted). We review the trial court's decision with respect to the award under an abuse of discretion standard. *Id.* In light of the entirety of this record, we find no abuse of discretion in the trial court's decision to award Ms. Flynn a portion of her attorney's fees in the amount of $15,000.

***Holding***

In light of the foregoing, we vacate the trial court's judgment finding Mr. Flynn voluntarily underemployed. We affirm the finding of contempt against Mr. Flynn, and the trial court's award of a portion of her attorney's fees to Ms. Flynn. This matter is remanded to the trial court for further proceedings consistent with this opinion. Ms. Flynn's requests for attorney's fees on appeal is denied. Costs of this appeal are taxed one-half to the appellee, Barbara Jean Hopper Flynn, and one-half to the appellant, Robert Dean Flynn, and his surety, for which execution may issue if necessary.

_____

DAVID R. FARMER, JUDGE