IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 15, 2019 Session

## DIANE KIKUE-YASUTAKE WINNE v. SCOTT ANDERSON WINNE

Appeal from the Circuit Court for Hamilton County
No. 13-D-2293      Jeffrey M. Atherton, Chancellor[1]

_____

No. E2018-01050-COA-R3-CV
_____

Husband petitioned the court to modify his alimony obligation after Wife moved in with her boyfriend. Wife maintained that her new living arrangement did not affect her need for alimony because she and her partner shared expenses equally and her living expenses after the move were unchanged. The trial court disagreed and suspended a portion of Husband's alimony obligation. Both sides raise issues with the trial court's decision. Contrary to Wife's assertion, we conclude that the alimony provision in the parties' marital dissolution agreement did not preclude modification of the alimony award as authorized by statute. We further conclude that the trial court did not err in basing its modification decision on the evidence of Wife's financial circumstances at the time of trial. We affirm the alimony modification, but we modify the judgment so that the modification applies retroactively to the date of Husband's petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed as Modified**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON II, J., joined.

Glenna M. Ramer, Chattanooga, Tennessee, for the appellant, Scott Anderson Winne.

Phillip C. Lawrence, Chattanooga, Tennessee, for the appellee, Diane Kikue-Yasutake Winne.

---

[1] Sitting by interchange.

# OPINION

## I.

Diane Kikue-Yasutake Winne ("Wife") and Scott Anderson Winne ("Husband") divorced on June 23, 2015. The final decree of divorce entered by the Circuit Court for Hamilton County, Tennessee, incorporated the parties' marital dissolution agreement ("MDA") and permanent parenting plan for their two minor children. Among other things, Husband agreed to pay Wife $2,200 per month as spousal support and $1,800 in child support.

After the divorce, Wife began dating Albert Waterhouse, a local businessman. In August 2017, Wife sold her home and moved into Mr. Waterhouse's home with her two children. Following the move, Husband asked Wife to agree to a voluntary termination of spousal support. When she refused, he turned to the court for relief. His modification petition alleged that Wife's cohabitation created a statutory presumption that she no longer needed alimony. *See* Tenn. Code Ann. § 36-5-121(f)(2)(B) (2017). For her part, Wife denied grounds existed for modifying her spousal support.

At the hearing on the petition, Wife did not dispute that she was living with Mr. Waterhouse. They shared, along with Wife's two children, a $490,000 home on Lookout Mountain, which the couple had purchased in October 2017. Wife and Mr. Waterhouse owned the home as joint tenants with right of survivorship.

Mr. Waterhouse was willing to support Wife. But she did not accept his offer; instead, she insisted on paying her own expenses. Wife contributed half of the down payment for the Lookout Mountain home and was jointly obligated for the mortgage. And she devised a financial sharing arrangement with Mr. Waterhouse to divide their new living expenses. Mr. Waterhouse paid the mortgage each month, or $3,329.19, while Wife paid the remaining living expenses, such as utilities, groceries, and home maintenance. Mr. Waterhouse explained that the arrangement "seem[ed] to be about even." He also financed some vacations for Wife and her children because she could not afford it.

Husband testified that Wife's standard of living improved after the move. She lived in a nicer neighborhood in a more valuable home. She took more expensive trips. And she no longer had any difficulty paying her share of the children's expenses.

For her part, Wife maintained that her living expenses before and after the move remained essentially the same. She created two spreadsheets itemizing her monthly expenses between August 2016 and March 2018 to document her claim. But she conceded that her new home was one hundred years old and "need[ed] constant work." She and Mr. Waterhouse had already made several improvements to their new home, and

2

more were planned for the future. She had also incurred additional expenses for housekeeping and yard maintenance since the move.

Wife claimed that she still needed the full amount of the alimony award. She only earned $10 an hour as a substitute teacher. Her teaching income had not increased appreciably since the divorce. She relied primarily on alimony and child support to pay her expenses. And even then, she sometimes had to dip into her retirement savings to pay her bills. Her monthly income and expense statement showed a $43 deficit, even with the current alimony and child support.

At the conclusion of the trial, the court ruled that Wife had not rebutted the statutory presumption that she no longer needed the full amount of alimony because she was receiving support from or supporting a third party. The court noted Wife's testimony that she was dividing expenses equally with Mr. Waterhouse. But the court questioned Wife's credibility. Based on its support finding, the court determined that Wife no longer needed $1,312.50 of her alimony. So the court suspended $1,312.50 of Husband's monthly alimony obligation, effective on the date of the final order.

## II.

Both parties raise issues on appeal. Husband argues that the court should have suspended the entire alimony award and made the suspension retroactive to the date he filed his modification petition. Wife contends that the court erred in applying the cohabitation statute in light of the language in the parties' MDA. Alternatively, she contends that the evidence preponderates against the court's finding that she no longer needs the full alimony award.

We review modification decisions for an abuse of discretion. *Wiser v. Wiser*, 339 S.W.3d 1, 11 (Tenn. Ct. App. 2010). These decisions are "factually driven" and require "a careful balancing of numerous factors." *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001) (quoting *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989)). Trial courts have wide latitude in choosing whether to increase or decrease the amount of alimony. *Id.* We are not inclined to second-guess the trial court's decision or substitute our own judgment for that of the trial court. *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). We presume that the trial court's decision is correct and review the evidence in the light most favorable to the decision. *Id.* at 105-06. But the abuse of discretion standard of review, while less rigorous, does not preclude meaningful appellate scrutiny. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). We will reverse trial court decisions that "cause[] an injustice by applying an incorrect legal standard, reach[] an illogical result, resolve[] the case on a clearly erroneous assessment of the evidence, or rel[y] on reasoning that causes an injustice." *Gonsewski*, 350 S.W.3d at 105.

As this is a nonjury case, our review of the trial court's factual findings is de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d). Our review of questions of law is de novo, with no presumption of correctness. *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013).

### A.

We begin with Wife's contention that the alimony provision in the MDA prevented the court from modifying alimony under these circumstances. A marital dissolution agreement is a contract. *Eberbach v. Eberbach*, 535 S.W.3d 467, 474 (Tenn. 2017). As a contract, it is valid and enforceable between the parties. *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006). But once incorporated in a final divorce decree, "issues in the MDA that are governed by statutes, such as child support during minority and alimony, lose their contractual nature and become a judgment of the court." *Eberbach*, 535 S.W.3d at 474. Trial courts retain the statutory authority to modify alimony awards when warranted. *Id.* This tension between the enforceability of a valid contract and the court's continuing authority to modify alimony awards lies at the heart of Wife's argument. *See Penland v. Penland*, 521 S.W.2d 222, 224 (Tenn. 1975) (explaining that "the reason for stripping the agreement of the parties of its contractual nature is the continuing statutory power of the Court to modify its terms when changed circumstances justify").

We review issues of contract interpretation de novo with no presumption of correctness. *Barnes*, 193 S.W.3d at 498. We seek to ascertain and effectuate the parties' intent as expressed in the MDA, giving each word its natural and ordinary meaning. *Long v. McAllister-Long*, 221 S.W.3d 1, 9 (Tenn. Ct. App. 2006).

The MDA provided that "Husband will pay to Wife the sum of Two Thousand Two Hundred Dollars ($2,200) per month as periodic alimony until the first of the following events: a) the death of either party; b) the remarriage of Wife; or c) seven (7) years." Wife concedes that the type of alimony awarded is alimony in futuro. Awards of alimony in futuro are modifiable. *See* Tenn. Code Ann. § 36-5-121(f)(2)(A), (B). Relevant to this appeal, the alimony statute specifically authorizes a court to modify an award of alimony in futuro when the alimony recipient lives with a third person. *See id.* § 36-5-121(f)(2)(B). But Wife maintains that the parties contracted to forego this basis for modification by intentionally leaving cohabitation off the list of events that would terminate alimony. We disagree.

The MDA does not address modification of alimony. The parties only specified when Husband's alimony obligation would terminate. While previous cases have held that divorcing parties may expressly agree that an alimony award is nonmodifiable, that is not the case here. *See, e.g.*, *Vick v. Hicks*, No. W2013-02672-COA-R3-CV, 2014 WL

4

6333965, at *2 (Tenn. Ct. App. Nov. 17, 2014) (enforcing alimony provision in the MDA that specified that "alimony shall not be modifiable by either party"). *But see Stewart v. Stewart*, No. E2013-02548-COA-R3-CV, 2014 WL 4415379, at *4-5 (Tenn. Ct. App. Sept. 9, 2014) (questioning whether parties can avoid modification of award of alimony in futuro by contract). The failure to include cohabitation in the list of events that terminate alimony does not evidence an intent to preclude modification of the award as authorized in the alimony statute. *Scherzer v. Scherzer*, No. M2017-00635-COA-R3-CV, 2018 WL 2371749, at *7-8 (Tenn. Ct. App. May 24, 2018) (rejecting similar argument with regard to transitional alimony award); *see also Stewart*, 2014 WL 4415379, at *4-5 (ruling that language in MDA did not foreclose modification of spousal support on other grounds not mentioned in the MDA).

Wife's reliance on this Court's previous decisions, such as *Myrick v. Myrick* and *Honeycutt v. Honeycutt*, enforcing termination provisions in MDAs is misplaced. *See Myrick v. Myrick*, No. M2013-01513-COA-R3-CV, 2014 WL 2841080, at *4-5 (Tenn. Ct. App. June 19, 2014); *Honeycutt v. Honeycutt*, 152 S.W.3d 556, 563 n.5 (Tenn. Ct. App. 2003). The sole focus in those cases was whether an express condition for termination of alimony had been met. *See Myrick*, 2014 WL 2841080, at *4; *Honeycutt*, 152 S.W.3d at 564. Neither case considered whether the court could modify alimony before any of the specified termination conditions had occurred. *But see Waddey v. Waddey*, 6 S.W.3d 230, 232-33 (Tenn. 1999) (holding that trial courts have no authority to modify an alimony award after a specified termination condition has been met).

The trial court did not err in considering Husband's petition to modify alimony. The type of alimony awarded, alimony in futuro, was modifiable. *See* Tenn. Code Ann. § 36-5-121(f)(2). And both the MDA and the final divorce decree are silent on modification. *See id.* § 36-5-121(a) (authorizing courts to modify alimony awards upon a proper showing "provided, that the award is subject to modification by the court based on the type of alimony awarded, the terms of the court's decree or the terms of the parties' agreement"). Silence does not preclude modification. *See Miller v. McFarland*, No. M2013-00381-COA-R3-CV, 2014 WL 2194382, at *6 (Tenn. Ct. App. May 23, 2014) (holding that failure to address modification in an MDA does not make alimony award nonmodifiable).

B.

An award of alimony in futuro "remain[s] in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances." Tenn. Code Ann. § 36-5-121(f)(2)(A). The party seeking modification bears the burden of proof. *McCarty v. McCarty*, 863 S.W.2d 716, 719 (Tenn. Ct. App. 1992). Once the change is proven, the petitioning party must show that modification of the award is justified. *See Bogan*, 60 S.W.3d at 730 ("[T]he [finding of a] change in conditions . . .

5

merely allows the obligor to demonstrate that reduction or termination of the award is appropriate.").

But if the changed circumstance is the cohabitation of the alimony recipient with a third person, a rebuttable presumption arises that the recipient no longer needs the alimony because the recipient is either supporting or receiving support from the third party. *Wright v. Quillen*, 83 S.W.3d 768, 775 (Tenn. Ct. App. 2002). Specifically,

> In all cases where a person is receiving alimony in futuro and the alimony recipient lives with a third person, a rebuttable presumption is raised that:
>
> (i) The third person is contributing to the support of the alimony recipient and the alimony recipient does not need the amount of support previously awarded, and the court should suspend all or part of the alimony obligation of the former spouse; or
>
> (ii) The third person is receiving support from the alimony recipient and the alimony recipient does not need the amount of alimony previously awarded and the court should suspend all or part of the alimony obligation of the former spouse.

Tenn. Code Ann. § 36-5-121(f)(2)(B). This presumption shifts the burden of proof to the recipient to show continuing need for the full amount of the alimony award. *Wright*, 83 S.W.3d at 775.

Because cohabitation was undisputed at trial, the trial court properly found that the statutory presumption applied. Consequently, the burden of proof shifted to Wife. The trial court found that Wife did not rebut the statutory presumption and suspended part of her alimony award. Both parties challenge the trial court's decision.

We begin with Husband's complaint that the court erred in its assessment of Wife's need. According to Husband, Wife no longer needed any alimony because Mr. Waterhouse was willing and able to support her. The trial court rejected Husband's argument, choosing instead to base its decision on the evidence of Wife's financial situation at the time of trial. We find no error in the trial court's decision. To determine whether an alimony recipient has rebutted the statutory presumption, our courts "examine the financial circumstances of the alimony recipient at the time of the modification hearing, to see whether the recipient has demonstrated a continuing need for the previously awarded amount of alimony." *Hickman v. Hickman*, No. E2013-00940-COA-R3-CV, 2014 WL 786506, at *7 (Tenn. Ct. App. Feb. 26, 2014); *see Woodall v. Woodall*, No. M2003-02046-COA-R3-CV, 2004 WL 2345814, at *5 (Tenn. Ct. App. Oct. 15, 2004) ("[T]he situation that existed at the time of trial must be considered in applying the statute.").

6

For her part, Wife argues that the trial court erred in finding that she did not rebut the statutory presumption. At the time of trial, Wife lived with Mr. Waterhouse in a more valuable home than her previous one. Her mortgage obligation had increased, and she incurred additional costs for housekeeping, yard maintenance, and home improvements. She was also paying living expenses for four people instead of three. Despite this evidence, Wife maintains that her financial circumstances remained unchanged.

The trial court questioned Wife's credibility. We give great deference to the trial court's credibility assessments. *See Watson v. Watson*, 309 S.W.3d 483, 490 (Tenn. Ct. App. 2009). "[W]e will not reassess factual findings based on witness credibility unless clear and convincing evidence supports a different finding." *Coleman Mgmt., Inc. v. Meyer*, 304 S.W.3d 340, 348 (Tenn. Ct. App. 2009). With this standard in mind, we consider the evidence of Wife's finances.

While conceding that she and Mr. Waterhouse each paid bills that benefitted the other, Wife testified that their respective payments cancelled each other out. And Mr. Waterhouse agreed that the arrangement seemed "about even." The trial court was not required to accept the witnesses' testimony that the financial arrangement was equal. *Cf. Scherzer*, 2018 WL 2371749, at *10-14 (affirming trial court's finding that Wife was supporting third party despite Wife's attempt to prove that expenses were divided equally). And Wife made no attempt to quantify her half of the financial arrangement.

Ultimately, the court found that Wife did not overcome the statutory presumption of support. But a finding of support does not end the inquiry. *Audiffred v. Wertz*, No. M2009-00415-COA-R3-CV, 2009 WL 4573417, at *4 (Tenn. Ct. App. Dec. 4, 2009); *see also Scherzer*, 2018 WL 2371749, at *15. Our courts "have frequently held that an alimony recipient has rebutted the presumption by demonstrating continuing need, despite living with a third person and either receiving support from, or providing support to, the third person." *Hickman*, 2014 WL 786506, at *7. The only changed circumstance here is Wife's cohabitation with Mr. Waterhouse. Her income remained the same. Although Wife claimed her expenses also remained stable, the trial court did not agree. In light of the court's credibility assessment, we cannot say that the evidence preponderates against the court's finding that Wife failed to demonstrate she needed the full amount of alimony and that her need was reduced by $1,312.50.

## C.

Finally, Husband argues that the court erred in denying his request to suspend his alimony obligation retroactive to the date of the filing of the petition to modify. Under the circumstances of this case, we agree. On September 12, 2017, when he filed his petition to modify, Husband sought permission to deposit payments into the registry of the court "pending the determination of the issues of the Petition for Modification,"

7

which Wife vehemently opposed. At the hearing on Husband's motion, Wife admitted she was cohabiting with Mr. Waterhouse. And in support of her position that "there is no harm to [Husband] by continuing to pay the money to her," Wife argued that she had savings from selling her house, which she could use to reimburse Husband if he were to prevail on his petition to modify. Wife cannot now argue, as she does on appeal, that "justice would not be served by requiring [Wife] to come up with a lump sum of money that would overcompensate [Husband] since it is certainly more likely than not that he took the income tax deduction for his alimony payments."

And the record shows Husband attempted to seek early resolution of the case. The circuit judge presiding over the hearing on Husband's motion denied the request to make payment into court, believing that the matter "could [be] set . . . for a hearing pretty quickly [and that they could] get this thing resolved." But, the case was not heard until April 20, 2018, because all of the circuit court judges eventually recused themselves, some sua sponte and some at Wife's request. And Mr. Waterhouse did not appear on one of the dates set for the final hearing even though he was issued a subpoena. Because of the delay caused by the recusals, Husband filed a second request to deposit payments into the court, which again was opposed by Wife and was never heard.

## III.

Nothing in the language of the parties' MDA precluded the court from modifying Husband's alimony obligation under the circumstances presented here. The court properly based its decision on Wife's financial circumstances at the time of trial. And the evidence does not preponderate against the court's finding that Wife had a diminished need for support. So we affirm the reduction of $1,312.50 from the monthly alimony obligation. But we modify the judgment so that the modification applies retroactively to the date of Husband's petition to modify. The case is remanded for such further proceedings as may be necessary and consistent with this opinion.

_____
W. NEAL MCBRAYER, JUDGE

8